F. A. AMUNDSON AND OTHERS v. CLOVERLEAF MEMORIAL PARK ASSOCIATION AND OTHERS.
HERBERT W. LORENTZ, APPELLANT.
CHARLES A. SWENSON, RECEIVER, RESPONDENT.[1]

March 15, 1946.

No. 34,029.

[1]Reported in 22 N. W. (2d) 170.

*Frank J. Collins* and *Mart M. Monaghan,* for appellant.

*J. A. A. Burnquist,* Attorney General, *William C. Green,* Assistant Attorney General, *T. O. Gilbert,* and *Charles A. Swenson,* for respondents.

YOUNGDAHL, JUSTICE.

This is an appeal from an 'order in a receivership proceeding.

Plaintiffs (F. A. Amundson, Robert L. Smith, Jr., and Newell Johnson, acting as the state department of commerce) brought an action to impound the property, assets, and business of defendants in connection with the sale of certain cemetery lots, to conserve these assets, and to dispose of them so as to protect the lot holders and creditors. Of the several defendants, Herbert W. Lorentz alone appeals.

Plaintiffs alleged that appellant was selling lots in Cloverleaf Memorial Park in Kandiyohi county for cemetery purposes without having properly organized a corporation under the cemetery laws of this state, and, further, that the sale of these lots constituted a sale of securities which were not properly registered under the security laws of the state and that appellant was not licensed to sell such securities.

On April 21, 1944, a hearing was conducted in the court below at which testimony was taken in connection with the matters alleged in the petition. It appeared from the evidence taken at the hearing that appellant, with others, had been conducting a business

of selling cemetery lots under the name of Cloverleaf Memorial Park, which business was, on February 23, 1944, incorporated under the same name and is hereinafter referred to as the corporation. It further appeared that appellant had collected $26,000 or more from the sale of these lots. The property which subsequently came into the possession of the receiver was of the approximate value of $19,000. At the hearing, all the defendants except the corporation and appellant disclaimed any interest in the assets of the corporation. On April 25, 1944, the court appointed Charles A. Swenson, an attorney at Atwater, as receiver of the property, assets, and business of the corporation, and any property held by appellant in connection with said business. The property was more particularly described in the order as consisting of a checking account, certain postal savings certificates, cashier's certificates, promissory notes, and any records and documents connected with said business. Mr. Swenson qualified as receiver and secured possession of the property described in the order of the court. On November 27, 1944, a hearing was had on claims that had been filed in the receivership proceedings. Mason W. Spicer, who represented appellant at the hearing on the appointment of a receiver, died shortly thereafter, and appellant was represented at the hearing on claims by Frank Collins, his present counsel. Appellant filed a claim against the receiver, and the question arose whether it had been filed in time. Two other claims had likewise been filed, and discussion took place as to the disposition of these claims. It appeared that one of the claims, a printing bill, had been paid. Of the two remaining claims, one was for attorney's fees for services performed by Spicer, and the other was appellant's. At the close of the discussion, the court suggested that the receivership be wound up, that the two claims be denied, and that the property and assets in the possession of the receiver be turned over to the corporation without prejudice to the right of claimants to assert their claims against the corporation. To this appellant agreed, as appears by the following proceedings which took place:

356

"The Court: If there are no claims filed in time, doesn't it amount to this, that the receivership is wound up and the receiver turns back the proceeds—

"Mr. Collins: To the corporation.

"The Court: You go to the corporation.

"Mr. Collins: I had that in mind, your Honor, but I wasn't aware until just now there are no claims except Mr. Spicer's and Mr. Lorentz who, in other words, has a claim against his own assets. I didn't want the receivership to be adjudicated and terminated without making a claim in his behalf against the receiver or whoever may be—

"The Court: Well, isn't that the proper way now, if there is no claim, to have the receiver settle the receivership at this time and then the proceeds, whatever they are, turned back to the corporation and they go to the corporation and get what they are entitled to?

"Mr. Collins: That is absolutely true, and it would be the proper procedure, but there are so many ramifications in this proceeding. I am not too familiar with any of them. I asked Mr. Lorentz how it came about he turned over his own property. Of course it is a matter of an accounting, I suppose, between the association and Mr. Lorentz as to which is his and which is the association's. I have no objection to that, your Honor. The court is right. I believe that would be the proper manner of expediting things. * * *

\* \* \* \* \*

"Mr. Collins: Let the record show my approval of the court's conclusion—

"The Court: I only made that—

"Mr. Collins:—statements made from the bench; it would seem that it is proper procedure that the appointment of a receiver in the first instance was merely for the preservation of assets and the receivership having served its purpose may now be wound up so far as any objection on the part of Lorentz is concerned, with the understanding that Lorentz doesn't thereby waive any claim against the corporation in receivership but only as against the receiver.

"The Court: Is there any objection to that by the receiver.

"Mr. Swenson: None at all.

\* \* \* \* \*

"The Court: Well, is there any objection by the parties who have filed claims after the time expired to have the court deny the claims without prejudice?

"Mr. Collins: We consent, your Honor, that that be done without prejudice to the respective claimants asserting their claims against the corporation. \* \* \*"

The receiver subsequently filed his final account and petitioned the court for an order allowing said account and requiring the assets in his possession to be turned over to the corporation in accordance with the terms of the stipulation. On December 27, 1944, a hearing was had on this account, at which time appellant agreed that the account might be allowed, but he objected to the turning over to the corporation of certain assets which he claimed were his and had been commingled with other assets in the possession of the receiver. Because of the stipulation previously entered into, the court refused appellant permission to go into the question of the ownership of these assets, allowed the account, and ordered the property in the possession of the receiver turned over to the corporation without prejudice to appellant to assert his claim against the corporation.

Appellant complains because the court ordered all the property turned over to the corporation without permitting him to show that some of it belonged to him. We do not see how he has any cause for complaint. The order was in accordance with the stipulation freely and understandingly made in open court at the hearing on claims. It is clear from the language of the stipulation that it was agreed that the property in the possession of receiver should be turned over to the corporation without prejudice to the right of appellant to assert any claim he might have against the corporation. Both appellant and his attorney were present in court when the stipulation was made and acquiesced therein.

There is no claim of fraud or mistake, and no motion was made by appellant in the court below to be relieved from the terms of the stipulation. Moreover, there is no argument here that counsel had no authority to enter into the stipulation. As we understand appellant's position, even though he concedes that the stipulation was entered into, he did not intend to agree that certain assets which he claims belonged to him should be turned over to the corporation. We cannot disregard the plain terms of the stipulation, absent, as here, a showing of fraud, mistake, or some other justifiable reason for disregarding it. A stipulation made by a party in the trial of a cause, unless he is relieved from it, is binding upon him, and when he makes a concession or adopts a theory upon which his cause of action is determined, he must abide by it on appeal. Pampusch v. National Council, 145 Minn. 71, 176 N. W. 158. See, also, Olson v. Gopher State Benevolent Society, 203 Minn. 267, 281 N. W. 43; Albert v. Edgewater Beach Bldg. Corp. 218 Minn. 20, 15 N. W. (2d) 460. Stipulations of counsel made during the progress of a trial often tend to shorten litigation and lessen the labors of both parties, as well as the court, and should be enforced when freely and understandingly entered into. Lieberknecht v. G. N. Ry. Co. 110 Minn. 457, 126 N. W. 71.

The order in the instant case fully protects appellant in permitting him to assert whatever rights he may have against the corporation. It is in accord with the stipulation appellant made, and he is not now in a position to dispute it.

Affirmed.