## TEXAS CO. v. OKLAHOMA TAX COMMISSION.

No. 32270.   Jan. 29, 1952.

Rehearing Denied Sept. 30, 1952.

Application for Leave to File Second Petition for Rehearing Denied Nov. 5, 1952.

*249 P. 2d 985.*

Ames, Daugherty, Bynum & Black, Oklahoma City, and Yates A. Land and B. W. Griffith, Tulsa, for plaintiff in error.

R. F. Barry, Oklahoma City, for defendant in error.

Hayes McCoy, Bartlesville, and Mac Q. Williamson, Atty. Gen., and James C. Harkin, Asst. Atty. Gen., amicus curiae.

BINGAMAN, J.   This action was brought by plaintiff, the Texas Company, to recover from the Oklahoma Tax Commission gross production taxes and proration tax assessed against oil and gas production from leases on lands held in trust by the United States for the so-called "Wild Tribes" of Indians, owned and operated by plaintiff. The taxes were paid to the Tax Commission under protest. In its petition the Texas Company sought recovery of such taxes paid for the months of September and October, 1942. By agreement between the company and the Tax Commission payment of such taxes accruing for the months following October, 1942, were made by the company to the commission, to be held by the commission to await the final outcome of this action, and to be repaid to the company if the final determination of the action was adverse to the tax commission.

The trial court sustained a general demurrer to plaintiff's petition filed by the Tax Commission, holding that the taxes were valid, and the company appealed to this court. After consideration of the case this court reversed the judgment of the lower court with directions to overrule the Tax Commission's demurrer to the plaintiff's pe-

tition. In this court the Tax Commission argued that the decision, in Helvering v. Mountain Producer's Corporation, 303 U. S. 376, in effect, overruled the previous decisions of the Supreme Court of the United States in Large Oil Co. v. Howard, 63 L.Ed. 416, 39 S. Ct. 183, 248 U. S. 549, Howard v. Gipsy Oil Co., 247 U. S. 503, 62 L.Ed. 1239, 38 S.Ct. 426, and other decisions of that court holding that the lessees of restricted lands were agencies of the Federal Government, and that a tax upon oil produced by them was in effect a tax upon the government and therefore invalid. We held that since the Mountain Producers case was limited to a holding that an income tax could not be assessed against income received by the beneficiary of a trust estate, whose income was derived from production from state lands, we did not feel at liberty to extend the effect of the decision beyond the question considered by the Supreme Court of the United States, but that any further extension of the doctrine enunciated therein should be announced by the court which rendered the decision. We said that it was our duty to follow the decision as written, leaving to the Supreme Court the making of the necessary changes in the application of the rule announced therein to render it applicable to the instant case. This decision was not then officially reported, due to the fact that an appeal was taken by the Oklahoma Tax Commission to the Supreme Court of the United States. It is now reported in 207 Okla. 363, 249 P. 2d 982.

On writ of certiorari the Supreme Court of the United States reversed this court, holding that while the Mountain Producers case involved the application of the Federal Income Tax Law to a cestui of an express trust which received the proceeds of the sale of oil taken from school lands owned by the State of Wyoming, the decision had a much broader scope and should not be limited to income tax alone. In its opinion, reported in 336 U.S. 342,

the court expressly overruled Large Oil Co. v. Howard, Howard v. Gipsy Oil Co., and other prior decisions granting immunity from taxation to lessees of such restricted lands, holding that the decision in Helvering v. Mountain Producers Corp. was as applicable to the present case as it was to decisions therein overruled which applied only to income taxes. The court said:

"The Mountain Producers case was not decided on narrow, merely technical or presumptive grounds. Its very foundation was a repudiation of those insubstantial bases for securing broad private tax exemptions, unjustified by actual interfering or destructive effects upon the performance of obligations to or work for the government, state or national. The decision came as the result of experience and of observation of the constant widening of the exempting process from tax to tax to tax."

After the decision was promulgated, the Texas Company filed in the Supreme Court a petition for rehearing, confined to the single proposition that since the decision overturned the recognized rule formerly existing, it should be applied prospectively only, or from and after the date thereof. The Supreme Court denied the petition for rehearing and refused to hold that its decision should operate prospectively only. Such order on rehearing held, however, that nothing in that court's opinion should be construed as forbidding the Supreme Court of this state from giving the opinion prospective effect only if possible or desirable under Oklahoma law. 336 U. S. 958.

Following that decision the parties have filed briefs upon the question of whether the final determination by this court that the oil produced from such restricted lands was taxable should be made to operate prospectively only or should be retroactive. The Texas Company contends that the decision should operate prospectively, following the rule announced in Oklahoma County v. Queen City Lodge, 195 Okla. 131, 156 P. 2d 340; Gibson v. Phillips Univer-

sity, 195 Okla. 456, 158 P. 2d 901; Yarbrough v. Oklahoma Tax Commission, 200 Okla. 402, 193 P. 2d 1017. Since the opinion of the Supreme Court of the United States in the instant case is binding upon this court, we necessarily hold that the oil and gas produced from these restricted Indian lands is subject to the gross production and proration taxes, and the sole question presented is whether such production should be held to be taxable only from the date of this opinion, as contended by the Texas Company.

Consideration of this question renders necessary a brief statement of the factual situation existing in the instant case. From statements in the briefs which stand uncontradicted it appears that following the Mountain Producers decision on March 7, 1938, the Tax Commission notified all lessees of such restricted lands producing oil and gas, that under the decision in that case such production was subject to the gross production and proration taxes. The Tax Commission then assessed the tax for the period from March 7, 1938, to June 30, 1941. Various companies, including the Texas Company, protested such assessments. These protests were heard by the commission on June 10, 1942, and at that time, at the request of the companies, taxes were also assessed from February 14, 1916, the effective date of the gross production tax law, to March 7, 1938. Then by agreement between the companies and the Tax Commission the penalties were waived and the tax from February 14, 1916, to June 30, 1941, was paid and settled. This action was approved by the district court of Oklahoma county, 68 O. S. 1941 §1469. Thereafter, all the companies, including plaintiff, paid gross production and proration taxes from July 1, 1941, to June 30, 1942, and the Texas Company voluntarily paid taxes accruing in July and August, 1942. It did not voluntarily pay the taxes accruing in September and October, 1942, but paid those taxes under protest and brought this action for their recovery. Apparently, from the brief of

the commission, in arriving at the amounts to be paid by the companies for the period prior to June 1, 1942, ad valorem taxes theretofore paid by the companies in connection with their operation of these restricted Indian leases were taken into consideration and credited against the gross production and proration taxes assessed. After June 1, 1942, the Texas Company did not pay ad valorem taxes.

From statements in the briefs of the Tax Commission it appears that the commission holds in suspense taxes in excess of $1,500,000, which it will be compelled to refund in the event this decision is given prospective operation from its date.

The brief of the Texas Company in effect admits the voluntary payments above stated, in that it argues that while the commission stresses the fact that for a short space of time some ten years ago the company paid the gross production taxes and proration taxes without protest, that fact does not prejudice its right to contest the validity of subsequent taxes in later years. It follows that in considering the question herein presented we do so upon the assumption that the factual situation outlined above exists, and that there is no liability upon the Texas Company for back taxes or penalties in the event prospective operation only is denied.

It seems established as a general principle that a decision of a court of last resort overruling a former decision by that court is retrospective in its operation, the theory being that the former decision so overruled never was the law. 14 Am. Jur. p. 345, §130; 21 C. J. S. p. 326, §194. In the first cited authority the rule is stated as follows:

"The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law. To this the courts have established the exception that where a constitutional or statute law has received a given

construction by the courts of last resort and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated, nor vested rights acquired under them impaired, by a change of construction made by a subsequent decision."

In the same paragraph it is further stated that while the exceptions above set out are held by high authority to be the only ones which should be allowed, that some courts in cases of unusual hardship have extended the principle to embrace such cases within the exceptions to the general rule of retrospective effect.

In its briefs, the Texas Company relies principally upon the decisions of this court in Oklahoma County v. Queen City Lodge, supra, Gibson v. Phillips University, supra, and Board of Equalization v. Tulsa Pythian Benev. Ass'n, 195 Okla. 458, 158 P. 2d 904.

In Oklahoma County v. Queen City Lodge, we overruled our previous decisions holding that the use of income from property for religious, charitable and educational purposes rendered the property exempt from the operation of the taxing statutes, and held that the true test was when the property itself, and not merely the income therefrom, was used for such purposes as brought it within the constitutional and statutory exemptions. In that case we gave effect to the hardship doctrine pointed out above, and to avoid the infliction of such hardship upon the lodge, held that the decision should operate prospectively only. In pointing out the reasons actuating the giving of prospective operation to our decision, we said:

"The pronouncement of this rule and the overruling of the three decisions above referred to constitutes a definite change in the construction of an important provision of our Constitution. The result is that under this decision property will be taxable which under the former construction was not taxable. We are aware that such change in construction of our constitutional pro-

vision would visit great hardship in many instances unless protection is given property owners as against taxes for back years which might naturally be thought now to have accrued during the past thirty-seven years since statehood."

The rule of prospective operation announced in the Queen City case was followed in the two other cases above cited, in which similar situations were involved.

It is clearly apparent that there is nothing in the factual situation in the instant case which would justify this court in adhering to the rule announced in the Queen City case. In the instant case there would be no hardship suffered by the Texas Company since proper settlement had been made of all its taxes and penalties due prior to the institution of this action, and it had been absolved from any further liability by such action and by voluntary payment up to September of 1942, at which time it paid the first installment of taxes under protest.

The application to the instant case of the rule announced in the Queen City and other cases, based upon the exemption because of hardship, would simply result in taking from the state taxes which, under the decisions of the Supreme Court of the United States in the Mountain Producers case and the Texas Company case, were rightfully due the state, and handing them back to the Texas Company, and the other companies who had likewise paid such taxes, thus depriving the state of funds which rightfully belong to it and which could well be used by it in the exercise of its governmental functions. No decision is cited by the Texas Company justifying the application of the doctrine of prospective operation under such circumstances and we know of none. The trend of authority is decidedly to the contrary.

In Laabs v. Tax Commission, 218 Wis. 414, 261 N. W. 404, the Supreme Court of Wisconsin had before it a case

involving the assessment of patent royalties. In May, 1928, the Supreme Court of the United States, in Long v. Rockwood, 277 U.S. 142, held that income from patent royalties was not subject to taxation by the states. Pursuant to that decision that plaintiff made returns of his 1928, 1929, and 1930 income upon forms which omitted reference to such royalties and thereafter sold his interest in the patent. On May 16, 1932, the Supreme Court of the United States, in Fox Film Corp. v. Doyal, 286 U. S. 123, overruling the decision in Long v. Rockwood, held the royalties on patents were taxable. Thereupon the Tax Commission assessed additional income taxes against plaintiff for 1928, 1929, and 1930. In an elaborate opinion, in which many decisions were cited and analyzed, the Supreme Court of Wisconsin held that the decision in Fox Film Corp. v. Doyal operated in accordance with the general rule retrospectively, and approved the collection of the taxes by the Tax Commission. It noted the exceptions where contract or vested rights had intervened, but refused to regard the payment of interest on the additional taxes as such a penalty or hardship as would warrant the exception of the plaintiff's case from the general rule.

A case involving similar, if not identical facts, except that the taxes were levied for different years, is People ex rel. Rice v. Graves, 273 N. Y. S. 582, affirmed by the Court of Appeals of New York, 200 N. E. 288, certiorari denied, 298 U. S. 683. In that case the court said that, adopting the theory that courts merely declare pre-existing law, it logically followed that an overruling decision operated retrospectively, and that courts have generally given retroactive effect to decisions which have overruled earlier precedents, except in cases where the person had acquired contract or property rights which were valid under the former decision, or had done some act which according to that law was innocent, and where the logical outcome of the doctrine of the retrospec-

tive effect would cause hardship and injustice. In that case, referring to the argument of hardship made by the taxpayer, the court said:

"We have not overlooked the relator's contention that a retrospective application of the decision in the Fox Film Case works an apparent hardship as to him. We concede as much. The answer to that argument, however, is that the hardship in question is no greater on the relator than was that suffered by the state by the erroneous decision in Long v. Rockwood. The ruling in that case deprived the state of revenue to which it was justly entitled. The construction in the instant case involved no hardship upon the relator beyond the payment of those taxes which he would have been required to pay in any event had the discredited decision in Long v. Rockwood never have been made."

Both of the above cited cases deal with situations where some hardship would be inflicted upon the appealing taxpayer by the application of the rule of retroactive operation, and the courts held that such hardships were not sufficient to justify them in making an exception to the general rule.

It further appears that the Texas Company, among others, recognized the right of the state to give a retrospective effect to the decision of the Supreme Court of the United States in the Mountain Producers case, which that court held in the Texas Company case overruled its decisions in Large Oil Co. v. Howard, and other cases. We base this statement upon the statement in the briefs that settlement was made for all taxes and penalties for which a liability might exist prior to the decision in the Mountain Producers case. Thereafter the Texas Company recognized the effect of the Mountain Producers case by voluntarily paying gross production and proration taxes for approximately one year.

From what we have said above, it logically follows that there is in the instant case no ground or reason for the application of the rule announced

in Oklahoma County v. Queen City Lodge.

Some argument is made that the Legislature, by enacting 68 O. S. 1941 §832, recognized that all production of lessees from restricted Indian lands was exempt from taxation. That section provides for a refund of taxes overpaid or in which payment was duplicated or in which payment was made in error "on account of the production being derived from restricted Indian lands and therefore exempt from taxation." We see nothing in this statute which prohibits this court from giving retrospective effect to its decision in the instant case. This for the reason that the Supreme Court of the United States having held that this production from restricted Indian lands was not exempt from taxation, the payment of the taxes required by the Tax Commission was not made in error and did not come within the express language of the statute. The exemption in such statute would be confined to cases where an error was made, and would not affect the situation in the instant case.

Much of the factual statement contained herein was not available to this court prior to the petition for rehearing and response thereto with the supporting briefs, all of which were filed after the adoption of the opinion of February 20, 1951. Since such matters are proper for consideration on the issue of prospective operation and since such issue is in this case for the first time following the decision by the United States Supreme Court, we have accepted such apparently undisputed statements from the briefs in lieu of referring the matter for the taking of evidence.

The judgment of the district court of Oklahoma county is affirmed.

ARNOLD, C.J., HALLEY, V.C.J., and WELCH, CORN, DAVISON, and JOHNSON, JJ., concur. GIBSON and O'NEAL, JJ., dissent.