JOHNSON BROTHERS WHOLESALE LIQUOR COMPANY, Intercontinental Packaging Company, and Twin City Wine Company, Relators,

v.

COMMISSIONER OF REVENUE, Respondent.

No. C2–86–1809.

Supreme Court of Minnesota.

March 20, 1987.

Bert M. Gross, Mark R. Geier, Minneapolis, for relators.

Thomas K. Overton, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

YETKA, Justice.

This case is brought as an appeal from the tax court by certain taxpayers who successfully challenged the constitutionality of a Minnesota wine excise tax, but who were denied the remedy of a refund of past excise taxes paid. We affirm the tax court.

Since 1934, Minnesota has imposed an excise tax on wines. *See* Minn.Stat. § 297C.02 (1986). In 1980, Minnesota passed a statute that set lower excise taxes on wine manufactured from Minnesota grown grapes. Minn.Stat. § 340.436 (repealed 1985). The sponsors of the bill suggested that it would help the Minnesota wine industry, which, in 1980, consisted of two small wineries.

Over the next 5 years, July 1980 through December 1984, sales of Minnesota farm wines were minuscule, constituting .0486% of total taxable wine sales. The excise taxes paid by Minnesota wine producers

came to $2,499. Had they been subject to Minn.Stat. § 297C.02, they would have paid $4,157, an increase of $1,658. The Minnesota excise tax paid on sales of all wines for this period was $13,650,481.

In 1984, the United States Supreme Court struck down a Hawaiian statute which gave preferential tax treatment to liquors made from locally grown produce, finding that it violated the commerce clause of the United States Constitution. *Bacchus Imports Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). In 1985, the first available opportunity, the Minnesota legislature repealed Minn.Stat. § 340.436, thereby making the higher general excise tax applicable to all wines.

Relators Johnson Brothers Wholesale Liquor Company and its affiliates, Intercontinental Packaging Co. and Twin City Wine Co., operate a wine wholesale distributorship throughout the Upper Midwest. From July 1980 through December 1983, relators paid $4,636,465.22 in wine excise taxes, $2,855,617.77 more than would have been due if they had sold Minnesota grown wines. In 1984, relators filed a claim with the Commissioner of Revenue for refund of the $2,855,617.77. The claim was subsequently transferred to the tax court by stipulation of the parties and approval of the Ramsey County District Court.

From December 1984 through July 1985, relators paid excise taxes on its sales as though Minn.Stat. § 340.436 applied to all wine sales. The Commissioner of Revenue issued an order assessing additional taxes. Relators appealed this order to the tax court where the case was consolidated with their pending claim for a tax refund.

The tax court held that Minn.Stat. § 340.-436 was unconstitutional and invalid. It denied relators' claim for a refund and affirmed the commissioner's claim on relators for payment of excise taxes that had been withheld.

Subsequent to the tax court decision, the attorney general submitted an affidavit indicating that the Minnesota Department of Revenue collected back taxes, with interest, from Minnesota wineries originally taxed under section 340.436 with the exception of $73 on which the statute of limitations had expired.

The issues on appeal are whether the excise tax passed in 1980 to favor Minnesota wine producers is constitutional and, if so, what is the proper remedy available for relators herein. In a recent case, the United States Supreme Court held that state taxes which have the purpose and effect of discriminating in favor of local products violated the commerce clause of the United States Constitution. *Bacchus Imports Ltd. v. Dias*, 468 U.S. 263, 273, 104 S.Ct. 3049, 3056, 82 L.Ed.2d 200 (1984). In *Bacchus*, the Court struck down a Hawaiian statute that levied a 20% tax on liquors sold at wholesale, but exempted domestically produced okolehao and pineapple wine from the tax. Hawaii argued that a tax on imported alcohol, even if discriminatory in purpose, was protected by Amendment XXI, section 2 of the U.S. Constitution, which states: "The transportation or importation into any State * * * for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." The Court responded:

> The central purpose of [the Twenty-first Amendment] was not to empower States to favor local liquor industries by erecting barriers to competition. * * * State laws that constitute mere economic protectionism are therefore not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor. Here, the State does not seek to justify its tax on the ground that it was designed to promote temperance or to carry out any other purpose of the Twenty-first Amendment, but instead acknowledges that the purpose was "to promote a local industry." Consequently, because the tax violates a central tenet of the Commerce Clause but is not supported by any clear concern of the Twenty-first Amendment, we reject the State's belated claim based on the Amendment.

*Id.* at 276, 104 S.Ct. at 3057 (citations omitted).

■ The state does not attempt to distinguish *Bacchus* on factual or legal grounds, but, instead, asks that this court reject the Supreme Court's holding and follow the reasoning of the dissent. However, the state offers no convincing reasons for taking this step. *Bacchus* is a recent decision, and its holding has not been subsequently limited or overruled by the Court. The state notes that, in *Bacchus*, the applicability of the Twenty-first Amendment was not argued by the State of Hawaii until it came before the Supreme Court, apparently suggesting that the Court's holding on the subject is weakened by its failure to hear a fully prepared argument. However, the *Bacchus* majority's analysis of the effect of the Twenty-first Amendment is thorough and the Court had the benefit of the dissent's lengthy discussion on the issue. Thus, the Court's interpretation of the Twenty-first Amendment must be treated as the product of due consideration. Under the *Bacchus* analysis, Minn.Stat. § 340.436 (repealed 1985) was clearly unconstitutional.

The next issue is determining the appropriate remedy. The harm caused by a discriminatory tax on interstate commerce is that it puts such commerce at a competitive disadvantage relative to local commerce. Logically, the disadvantage suffered by relators could have been corrected either by extending the lower rates of section 340.-436 to all wine producers or by severing the statute from the chapter and thus raising taxes for merchants of Minnesota wine.

■ The United States Supreme Court has recognized that either of these means of equalizing taxes is an acceptable remedy to unconstitutional discrimination. *Iowa-Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239, 247, 52 S.Ct. 133, 136, 76 L.Ed. 265 (1931). *Cf. Heckler v. Mathews*, 465 U.S. 728, 740, 104 S.Ct. 1387, 1395, 79 L.Ed.2d 646 (1984) (commenting on alleged discrimination in social security benefits, Court stated that the appropriate remedy to a denial of equal treatment "can be accomplished by withdrawal of benefits from the favored class as well as by exten-sion of benefits to the excluded class"). In this case, we believe that the tax court was correct in choosing the latter remedy and thus denying relators any refund.

■ When a statutory scheme has been declared unconstitutional, our primary goal in determining a remedy is, insofar as possible, to effectuate the intent of the legislature had it known the statutes were invalid. *See Archer Daniels Midland Co. v. State*, 315 N.W.2d 597, 600 (Minn.1982). Here, the original tax on wine, adopted in 1934 and in effect for 46 years, was uniform on all growers and distributors. It was and is a major contributor of revenue to the state. The 1980 act was an amendment only to the general act—an exception to its provisions. It would obviously have been the legislature's intent that the general act still prevail if the 1980 amendment were invalid. Further evidence of the Minnesota Legislature's intent was its decision to repeal the 1980 amendment in the first session held after the U.S. Supreme Court decided *Bacchus*, thus restoring taxes on Minnesota's wineries to their former levels.

The refund requested by relators would be incommensurate with the harm they suffered. The effect of Minn.Stat. § 340.436 on relators' wine sales was minimal. Sales from Minnesota wineries constitute less than one-half of one percent of total Minnesota wine sales. The Commissioner of Revenue's action in retroactively assessing Minnesota's farm wineries for nearly all the taxes they should have paid is adequate to negate whatever miniscule amount of injury suffered by relators. All future harm has already been forestalled by the legislative repeal of section 340.436 in 1985.

At oral argument, relators disputed the veracity of the commissioner's claim that all but $73 of taxes owed by Minnesota wineries under the general excise tax has been collected, noting that the affidavit to this effect is not part of the official record. Relators would have us remand this case to the tax court to substantiate the commissioner's claim. However, we believe it would be an unnecessary burden on the courts to require such a remand given the

ease with which the relators can inquire into the truth of the challenged affidavit.

Accordingly, the tax court is affirmed in all respects.