CAMBRIDGE STATE BANK, et al., Norwest Bank Duluth, National Association (formerly First National Bank of Duluth), Respondents,

v.

Arthur C. ROEMER, Commissioner, Department of Revenue, and the State of Minnesota, Appellants.

No. C0–89–2097.

Supreme Court of Minnesota.

July 20, 1990.

Hubert H. Humphrey, III, Atty. Gen. and Thomas R. Muck, Deputy Atty. Gen., Tax Litigation Div., St. Paul, for appellants.

Robert J. Schnell, Jr. and Walter A. Pickhardt, Faegre & Benson, Minneapolis, for Norwest Bank Duluth.

Christopher J. Dietzen, Andrew J. Mitchell, Larkin, Hoffman, Daly & Lindgren, and Laurence R. Waldoch, James R. McCarthy, and Thomas L. Fabel, Lindquist & Vennum, Minneapolis, for Cambridge State Bank.

YETKA, Justice.

In the autumn of 1984, respondent banks commenced a tax refund claim in the district court of Ramsey County pursuant to Minn.Stat. § 290.50, subd. 2 (1988). This consolidated action by over 170 Minnesota banks sought tax refunds for the tax years 1979 through 1983. The district court concluded that the pre-1983 Minnesota bank excise tax imposed by Minn.Stat. § 290.361 (1984) (repealed 1987) is, in substance, an income tax and discriminates against federal debt instruments in violation of the borrowing and supremacy clauses of the United States Constitution. The court found that the inclusion of interest from federal obligations in the calculation of the banks' franchise tax was discriminatory and, therefore, in violation of 31 U.S.C. § 3124(a) (1982) (formerly numbered § 742) [1] because interest from certain state obligations was exempt from the calculation of the tax. The district court ordered the State of Minnesota to refund to respondents, with interest, taxes collected under the statute between 1979 and 1983. We affirm in part and reverse in part.

The record in this case includes a detailed stipulation of facts entered into by the parties. The trial was bifurcated into two phases: Phase I, a liability phase, and Phase II, a remedy phase. The issue of liability was tried before the court on November 6–17, 1986. By agreement of counsel and order of the court, evidence was presented by four banks for the 1979 tax year. The four banks were: Cambridge State Bank, Midway National Bank of St. Paul, First Security State Bank of Sleepy Eye, and Norwest Bank Duluth. The court heard lengthy and detailed testimony from several expert witnesses concerning the economic impact of the tax on the borrowing power of the federal government. The parties agreed that the conclusion of the court on the liability phase would be conclusive as to all tax years at issue and all of the plaintiff banks. Pursuant to statute, the measure of the tax paid by these banks included interest income earned on obligations of the United States government, but did not include interest income earned

---

1. 31 U.S.C. § 3124 (1982) provides:
   (a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, *except—*
   (1) *a nondiscriminatory franchise tax* or another nonproperty tax instead of a franchise tax, imposed on a corporation * * *.
   (Emphasis added.)

by the banks on obligations of certain agencies of the State of Minnesota. Respondents filed timely protective claims for refunds for the tax year 1979 and timely filed these actions for refunds.

The trial court concluded that the tax violated 31 U.S.C. § 3124. In summary, section 3124 provides that obligations of the United States government are immune from state and local taxation, but interest earned on these obligations may be included in the measure of a "non-discriminatory" corporate franchise tax. The trial court concluded that the Minnesota tax was a discriminatory income tax and, therefore, violated the supremacy and borrowing clauses of the United States Constitution. The court's conclusion regarding discrimination was premised on a finding that, under Minnesota law, interest earned on obligations of the United States government was included in the computation of the corporate franchise tax whereas interest earned on certain obligations [2] of the State of Minnesota was exempt from the computation of the corporate franchise tax.

The trial court also concluded that, although the tax imposed by Minn.Stat. § 290.361 (1984) is labeled an "excise" tax, it is a direct tax on net income for purposes of federal statutory and constitutional law. The trial court rejected all of appellants' arguments and ordered that the appellants were liable for refunds in amounts to be determined in Phase II of the trial. On August 28, 1989, following Phase II of the trial, the court ruled that appellants were liable for refunds, with interest, and ordered retroactive relief in the following amounts: Norwest—$189,065; Sleepy Eye —$36,278; Cambridge—$23,833; and Midway—$46,574. This appeal followed.

I. The first issue raised by this appeal is whether the bank tax imposed under section 290.361 and governed by Minn.Stat.

§ 290.02 (1988) is a non-discriminatory franchise tax. This court has determined that the tax imposed by section 290.02 is a franchise tax. *Reuben L. Anderson-Cherne, Inc. v. Commissioner of Taxation,* 303 Minn. 124, 226 N.W.2d 611, *appeal dismissed,* 423 U.S. 886–87, 96 S.Ct. 181, 46 L.Ed.2d 118 (1975) (dismissed for lack of substantial federal question). Respondents ask this court to overrule *Reuben* on the grounds that, in "economic effect," the tax is an income tax. According to this theory, the tax would clearly violate 31 U.S.C. § 3124 and would, therefore, be unconstitutional under the borrowing clause of the United States Constitution. The trial court accepted this theory and concluded that the tax is an income tax. We disagree.

The trial court's conclusion on this issue is inconsistent with the legislative history of section 3124 and *Reuben.* In *American Bank & Trust Co. v. Dallas County,* 463 U.S. 855, 870–71, n. 13, 103 S.Ct. 3369, 3379, n. 13, 77 L.Ed.2d 1072 (1983), the United States Supreme Court observed that the inability of states to include interest from federal obligations in an *income* tax was the primary reason for enacting tax legislation permitting the imposition on national banks of *non-discriminatory franchise* taxes based on corporate income. Thus, the exception for non-discriminatory franchise taxes measured by income appears to be an intentional elevation of form over substance in recognition of the fact that banks would otherwise operate totally tax free.

In *Reuben,* this court noted that 31 U.S.C. § 3124 was amended in 1959 so as to permit the inclusion of interest from federal obligations in the computation of a non-discriminatory franchise tax and reasoned that to conclude the tax imposed by section 290.02 was, in reality, an income tax would

---

**2.** Appellants dispute the number of obligations that are exempt from the computation of the corporate franchise tax. Appellants concede, however, that at least two state/municipal obligations were exempt:

    (1) Industrial Development Bonds issued under Minn.Stat. ch. 474 prior to June 30, 1979; and

    (2) State University Bonds issued under Minn.Stat. §§ 136.31–38;

Given that the parties have stipulated that at least some state obligations were exempt, this court need not reach the issue of whether the other types of obligations were actually exempt.

render the 1959 amendment "completely meaningless." *See Reuben,* 303 Minn. at 130, 226 N.W.2d at 615. The *Reuben* court's determination that the tax levied on the income from interest on government obligations is a franchise tax is supported by this court's decision in *Soo Line R.R. Co. v. Commissioner of Revenue,* 377 N.W.2d 453 (Minn.1985), where the court observed that "[t]he incident of the *franchise* taxed under the excise tax,[3] however, is the privilege of carrying on business, not the property of the franchise." *Id.* at 455 (emphasis and footnote added; citation omitted). The reasoning of the *Reuben* court is also supported by the United States Supreme Court's observations in *American Bank & Trust.* Accordingly, we reverse the trial court's conclusion that the bank tax is an income tax for purposes of section 3124 and conclude instead that it is a franchise tax. As a result, the next question is whether it is "non-discriminatory."

■ Our review of the relevant statutes convinces us that the tax in question is discriminatory. Banks doing business in the State of Minnesota during the relevant period were required to pay a tax measured by their net income. Minn.Stat. § 290.361, subd. 1. That tax was governed by the provisions of Minn.Stat. § 290.02. *Id.* Both Minn.Stat. §§ 290.02 and 290.361 referred to an "excise" tax measured by taxable net income. Minn.Stat. § 290.08, subd. 8 (1984) (repealed 1987) exempted any interest earned on either United States or State of Minnesota obligations from gross income. That exclusion, however,

*was not* applicable to "corporations taxable under section 290.02 or *290.361.*" *Id.* (emphasis added). Consequently, for banks doing business in the State of Minnesota, interest earned on federal obligations was *included* in the taxable net income figure used to compute their chapter 290 excise tax. Certain state bond enabling statutes, however, overrode the above provisions of chapter 290 and exempted interest earned thereon from inclusion in income for the purpose of calculating chapter 290 taxes. *See* Minn.Stat. § 136.32 (1982) (amended 1983) (State University Bonds ("SUB's")); Minn.Stat. § 474.12 (1982) (repealed 1983) (Municipal Industrial Development Bonds ("IDB's")).[4]

The trial court, in reliance on *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 398, 103 S.Ct. 692, 696, 74 L.Ed.2d 562 (1983), concluded that, during the 1979 through 1983 calendar years, the bank tax was discriminatory because interest from certain State of Minnesota obligations was exempt.[5] Appellants concede that, at least as to IDB's and SUB's, the bank tax is discriminatory. Although we question the judgment of appellants in making this concession, the trial court's conclusion that the bank tax was discriminatory is affirmed as the law of this case.

■ II. The second issue presented by this appeal is whether the bank tax falls within a *de minimis* exception to section 3124. Appellants argue that the impact of the bank tax on the borrowing power of the United States government is *de minimis* and, therefore, the constitutional defects should be ignored. Appellants' *de minim-*

---

**3.** An excise tax is a tax imposed on the performance of an act, the engaging in of an occupation, or the enjoyment of a privilege, including corporate privileges. In current usage, the term includes practically every internal revenue tax except the income tax. Black's Law Dictionary 506 (5th ed. 1979).

**4.** The trial court also found that interest earned on obligations of the following State of Minnesota agencies was exempt from inclusion in the bank tax:

Minnesota Higher Education Coordinating Board Bonds
Minnesota Higher Education Facilities Authority Bonds
Metropolitan Transit Commission Bonds

Public Water and Sewer Bonds
Hospital District Bonds
Hospital Revenue Bonds
St. Cloud Transit Commission Bonds
Metropolitan Waste Control Commission Bonds
Housing Redevelopment Authority Bonds
Area Redevelopment Agency Bonds
Minnesota State Armory Commission Bonds
Solid Waste Management District Bonds

**5.** In 1983, the Minnesota Legislature repealed the exemption provisions contained in numerous state obligation enabling statutes. Act of May 20, 1983, ch. 213, 1983 Minn.Laws 613, 614–25.

*is* defense is apparently based on dicta in *Memphis Bank & Trust* where, in a footnote, the Court stated:

> We cannot regard the impact of the discrimination as *de minimis*. According to the United States, which filed a brief as *amicus curiae* in support of reversal, if all 50 States enacted provisions comparable to the Tennessee bank tax, the United States would incur additional annual borrowing costs estimated at $280 million at an interest rate of 12%.

*Id.* at 398 n. 8, 103 S.Ct. at 696 n. 8 (citation omitted).

In the present case, the trial court concluded that there is no *de minimis* defense and found that, even if there were such an exception, "[t]he economic incidence of this discrimination would be far from de minimis, reaching into the billions of dollars of increased federal expense." We cannot say that the trial court's finding was clearly erroneous; thus, we conclude that the impact of the bank tax on federal borrowing was not *de minimis*. Accordingly, even assuming, *arguendo*, that there is a *de minimis* exception to section 3124, it is not applicable in the instant case.

■ III. Appellants argue that respondents should be estopped from asserting their claims that exemption of IDB's and SUB's from the bank tax discriminated against federal obligations under the acceptance-of-benefits doctrine. In *Gale v. Commissioner of Taxation*, 228 Minn. 345, 37 N.W.2d 711 (1949), the taxpayer sought to invoke the provisions of a tax statute to secure the benefit of a tax computation and, at the same time, challenged the constitutionality of another provision of the same act. *Id.* at 352, 37 N.W.2d at 716. This court said: "[H]e who assumes the validity of a statute by invoking its provisions to obtain a tax reduction may not attack its constitutionality." *Id.* (citing *Byard v. Commissioner of Taxation*, 209 Minn. 215, 296 N.W. 10 (1941)).

Respondents do not dispute that they accepted the tax benefits of the exemption for interest on State of Minnesota obligations. Instead, respondents suggest that the acceptance-of-benefits doctrine of

estoppel is no longer good law. In *Wegan v. Lexington*, 309 N.W.2d 273, 277 (Minn. 1981), this court did not reject the acceptance-of-benefits doctrine in tax cases like *Gale* and *Byard*. *See Wegan* at 277. We conclude, therefore, that, under the rule in *Gale*, respondents should be estopped from challenging the constitutionality of the bank tax. We do not, however, decide this case on that ground alone.

■ IV. Based on Minn.Stat. § 645.20 (1988), appellants ask this court to declare unconstitutional language in the various state obligation enabling statutes which exempt the interest earned thereon from taxation and to sever it from the remaining portion of the statutes. This is a compelling argument. Minn.Stat. § 645.20 (1988) provides, in pertinent part, as follows:

> If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one * * *.

It is the exemption for interest earned on state obligations that makes the bank tax discriminatory and, therefore, unconstitutional. Moreover, since the legislature amended the statutes in question by deleting the challenged exemptions, this court can presume that the legislature would have enacted the remaining provisions without the void one.

Indeed, when the legislature adopted the bank franchise tax in 1941, it did not exempt the disputed state interest revenue. *See* Act of Feb. 21, 1941, ch. 18, § 4, 1941 Minn. Laws 23, 24. The provisions exempting interest of certain state obligations were not enacted until 1957 and 1967. Act of Apr. 24, 1957, ch. 603, § 2, 1957 Minn. Laws 753 (SUB's); Act of May 4, 1967, ch. 297, § 12, 1967 Minn.Laws 456, 465 (IDB's). Can it be said that these later additions invalidated the *entire* original act? We think not. Since the original act was valid,

the subsequent amendments, if unconstitutional, may be severed from the original act which remains valid.

In *Johnson Bros. Wholesale Liquor Co. v. Commissioner of Revenue*, 402 N.W.2d 791 (Minn.1987), this court affirmed the tax court's use of a similar remedy in addressing a discriminatory tax on wine sales. *See id.* at 793. The *Johnson Bros.* court also observed that the United States Supreme Court has recognized that a withdrawal of benefits from the favored class is an acceptable remedy for unconstitutional discrimination. *Id.* (citing *Iowa–Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239, 247, 52 S.Ct. 133, 136, 76 L.Ed. 265 (1931)). In the case at bar, the trial court simply did not apply section 645.20. Section 645.20 indicates, however, subject to certain qualifications which are not applicable in this case, that if any provision of a law is found to be unconstitutional, severance is mandatory and the remaining provisions are valid. Accordingly, this court concludes that the trial court abused its discretion in refusing to apply section 645.20 and is, therefore, reversed.

Respondents seek to avoid such a result by emphasizing that the Minnesota Department of Revenue has stipulated that it will not collect Minnesota bank taxes on interest earned from SUB's issued pursuant to Minn.Stat. § 136.31–38 or from IDB's issued prior to July 1, 1979. This stipulation arguably distinguishes the present case from *Johnson Bros.* wherein the Revenue Department actually collected the back taxes from the unlawfully favored wineries. *See Johnson Bros.* at 792.

Respondents cite *Allegheny Pittsburgh Coal Co. v. County Commissioner of Webster County*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), as authority for the proposition that discriminatory taxation is not cured by raising a tax on someone else. However, they fail to point out that *Allegheny* was an equal protection property tax case presenting significant valuation problems and did not involve a statutory mandate such as Minn.Stat. § 645.20. Respondents also cite *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 267–81 n. 7, 104 S.Ct. 3049, 3053 n. 7, 82 L.Ed.2d 200 (1984), but again fail to discuss significant differences between that case and this one. In *Bacchus*, the State of Hawaii imposed a 20% excise tax on wholesale liquor, but exempted certain locally manufactured alcoholic beverages. Wholesalers of nonexempt beverages challenged the tax as violative of the commerce clause. In the footnote cited by respondents, the United States Supreme Court noted that the severance issue was not presented to the Supreme Court of Hawaii in the case below and merely commented in passing that "severance" would not relieve the harm inflicted. *Bacchus*, 468 U.S. at 267–68 n. 7, 104 S.Ct. at 3053 n. 7.

The recent decision in *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, ⸺ U.S. ⸺, 110 S.Ct. 2238, 110 L.Ed.2d 17 (June 4, 1990), makes clear that a state may cure the invalidity of a discriminatory tax by assessing and collecting back taxes from those who benefited from the discrimination. *Id.* 110 S.Ct. at 2251–53. Although the Court concluded in *McKesson* that, in commerce clause cases, a state that selects this remedy must *actually* impose a retroactive tax, that conclusion was premised on the fact that actual collection is necessary in order to cure the comparative economic disadvantage caused by the discriminatory tax. *See id.* at 2251–55. The present case is distinguishable from *McKesson* because there is no need to remedy any comparative economic disadvantage. Accordingly, we hold that severing the invalid exemptions renders the bank excise tax non-discriminatory and thereby satisfies the due process requirement of a fully adequate post-deprivation remedy.

█ More fundamentally, even if actually collecting the tax is a prerequisite to curing the constitutional infirmity of the tax in question, respondents do not explain where the Revenue Department gets the authority to limit this court's power to fashion an appropriate remedy for an unconstitutional tax. *See Amundson v. Cloverleaf Memorial Park Ass'n*, 221 Minn. 353, 358, 22 N.W.2d 170, 172 (1946) (sug-

gesting that mistake and lack of authority are grounds for relieving a party from a stipulation).[6] Were it not for our conclusion that the *Memphis Bank* case established a new principle of law that was not clearly foreshadowed, we would order the Revenue Department to assess and collect the tax attributable to the state obligation interest income. We believe that ordering actual collection of the tax in this case would unfairly penalize both parties for failing to foresee the change in the law brought about in *Memphis Bank.* Consequently, we reject the respondents' contention that actual imposition of back taxes is necessary in this case.

An additional reason for reversing the trial court is that it inappropriately applied the *Memphis* decision retroactively. The three factors governing non-retroactive application of judicial decisions were set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), as follows:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retrospective application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.* at 106–07, 92 S.Ct. at 355 (citations omitted). Applying these factors to the present case, we conclude that the decision in *Memphis* should be given prospective application only.

First, since the legislature passed the first state obligation interest exemption to the bank franchise tax in 1957, more than *20 years* have elapsed before these taxpayers questioned the validity of this exemption. Yet, respondents argue that the *Memphis* case should be applied retroactively because it was not, they aver, a case deciding an issue of first impression whose resolution was not clearly foreshadowed. The fact that this case was not brought until immediately after the *Memphis* case was decided, however, completely eviscerates the argument that the *Memphis* decision was clearly foreshadowed.

Second, the primary purpose of section 3124 is to protect the borrowing power of the United States government. *See Memphis Bank,* 459 U.S. at 396, 103 S.Ct. at 695 (referring to the congressional intent to prevent taxes which diminish the value of United States obligations). Respondents have not explained how the borrowing power of the United States will be protected by allowing them to receive multimillion dollar refunds. It seems to us that the purpose of promoting investments in United States obligations and protecting the borrowing power of the United States government will be just as adequately advanced by prospective as by retroactive application. This is especially true given that, soon after *Memphis Bank* was decided, the Minnesota Legislature met and repealed the disputed exemptions for Minnesota obligations. Act of May 20, 1983, ch. 213, 1983 Minn.Laws 613, 613–25.

Finally, in weighing the equities involved in this case, it is obvious that retroactive application of the *Memphis Bank* decision would cause a hardship to the State of Minnesota. The excise taxes in question have long since been spent by the state in providing, among other things, regulatory and other public services for all taxpayers, including the respondent banks. *See First Nat'l Bank of Fredericksburg v. Commonwealth,* 520 Pa. 244, 553 A.2d 937, 947 (1989) (Larsen, J., dissenting). By compari-

---

**6.** When confronted with similar options, the Nebraska Supreme Court also chose to sever the unconstitutional exemptions. *State ex rel.*

*Douglas v. Karnes,* 216 Neb. 750, 760, 346 N.W.2d 231, 236 (1984).

son, no equivalent hardship results to the banks by a prospective application of the decision in *Memphis Bank*. On the contrary, respondents' taxes were actually reduced during the years the state obligation interest exemptions were mistakenly in effect. If the *Memphis Bank* decision were applied retroactively, respondent banks would have operated essentially tax free during the period in question and would receive a refund of taxes that were, in effect, paid by others. Such a result would provide respondent banks with an undeserved windfall. As corporate citizens, these banks should not be allowed to enjoy the benefits of the privilege of doing business in the State of Minnesota without paying taxes.

In construing the very same issue, the Oklahoma Supreme Court in *First of McAlester Corp. v. Oklahoma Tax Commission,* 709 P.2d 1026 (Okla.1985), also decided that *Memphis Bank* should be applied prospectively only. The *McAlester* court stated:

> It is arguable that previous case law foreshadowed the *Memphis Bank* pronouncement. It is equally persuasive that the type of bank tax in question might reasonably have been assumed to be constitutional based on the longstanding and widespread practice of various states to which the United States Supreme Court had not specifically spoken.
>
>      \*      \*      \*      \*      \*      \*
>
> Although the *Memphis Bank* case does not involve a reversal of a United States Supreme Court decision as in *Texas Company* [*v. Oklahoma Tax Commission,* 207 Okl. 385, 249 P.2d 985 (1952)], it does decide a new principle of law.
>
> \* \* \* Although the new principle of law established in *Memphis Bank* might be characterized as merely a progression from former decisions, it was not foreseen by the Commission, nor by the Oklahoma Legislature.

*Id.* at 1034–36. We believe that the position of the Oklahoma court is sound. *See also American Trucking Ass'ns, Inc. v.*

*Smith,* — U.S. —, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (applying the *Chevron Oil* test in upholding the Arkansas Supreme Court's prospective application of a United States Supreme Court decision which established a new principle of law).

For all of the above reasons, the trial court is reversed in its finding that the Minnesota bank franchise tax is an income tax and in the remedies it imposed. Respondents' request for refunds is denied in all respects.[7]

KELLEY, J., concurs specially with opinion.

KELLEY, Justice (concurring specially).

I concur in the result; although I do not join that part of the opinion that purports to hold that the banks should be estopped from challenging the constitutionality of the bank tax.

---

7. Because of our other rulings in this case, we need not decide the issue of whether the trial court erred in refusing to reduce the ordered tax

refunds by amounts allegedly allocable to the production of the interest income.