**COTTO WAXO COMPANY, Appellant,**

v.

**Charles W. WILLIAMS, as Commissioner of the Minnesota Pollution Control Agency, Appellee.**

No. 94–1438.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 18, 1994.

Decided Jan. 31, 1995.

791

Lawrence A. Moloney, Minneapolis, MN, argued (Gregg J. Tucek, on brief), for appellant.

Peter M. Ackerberg, Asst. Atty. Gen., argued, for appellee.

Before BEAM, Circuit Judge, CAMPBELL,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

BEAM, Circuit Judge.

This is a dormant Commerce Clause case. Cotto Waxo challenges a Minnesota law prohibiting the sale of petroleum-based sweeping compounds. The district court held that the local benefits of the law outweigh the law's burden on interstate commerce, and granted summary judgment in favor of the state. We reverse.

---

* The HONORABLE LEVIN H. CAMPBELL, Senior Circuit Judge for the United States Court of Appeals for the First Circuit, sitting by designation.

## I. BACKGROUND

In 1992, the Minnesota legislature enacted a statute (the Act) prohibiting the sale of petroleum-based sweeping compounds.[1] The Act granted enforcement powers to the Minnesota Pollution Control Agency.

· Before passage of the Act, Cotto Waxo sold petroleum-based sweeping compounds to Minnesota wholesalers and distributors, who in turn sold the products to retailers throughout the Midwest. After the Act took effect, the Minnesota wholesalers and distributors refused to purchase or sell Cotto Waxo's petroleum-based sweeping compounds. As a result, Cotto Waxo has lost not only its Minnesota customers but also most of its sales in surrounding states.

Cotto Waxo filed an action against the Commissioner of the Minnesota Pollution Control Agency, seeking declaratory and injunctive relief. In its complaint, Cotto Waxo alleges that the Act violates the Commerce Clause, the Equal Protection Clause, and 42 U.S.C. § 1983. Cotto Waxo requested a preliminary injunction to prevent enforcement of the Act, but the district court denied the request. The Commissioner moved for summary judgment, which the district court granted. Cotto Waxo appeals the Commerce Clause issue.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo. *Brandenburg v. Allstate Ins. Co.*, 23 F.3d 1438, 1440 (8th Cir.1994). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

■ As a threshold matter, the parties dispute the scope of the Act. The district court held that the Act forbids all sales of petroleum-based sweeping compounds in Minnesota. The Commissioner contends that the Act should be construed more narrowly, reaching only sales *for use* in Minnesota.

The Commissioner urges us to adopt the narrower reading of the Act based on three canons of statutory construction. First, noting the legislature's primary concern with sales for use in Minnesota, the Commissioner argues that we should construe the statute to effectuate legislative intent. Second, relying on two letters from the pollution control agency interpreting the statute as prohibiting only sales for use in Minnesota, the Commissioner argues that we should defer to the interpretation of the enforcing agency. Third, suggesting that we are required to interpret the statute so as to uphold its constitutionality, the Commissioner argues that we should impose a "saving" construction on the Act.

We recognize the validity of these three canons of construction but find them inapplicable here. The plain meaning of the statute is clear and unambiguous. Under Minnesota law, a statute's plain meaning is not to be disregarded if the language is clear and unambiguous. *See* Minn.Stat.Ann. § 645.16 ("When the words of a law ... are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). *See also Kirkwold Constr. Co. v. M.G.A. Constr., Inc.*, 513 N.W.2d 241, 244 (Minn.1994).

The language of the statute prohibits all Minnesota sales of the petroleum-based sweeping compounds. The statute makes no reference to the location in which the product will be used. We therefore decline the Commissioner's invitation to impose a narrowing construction on the Act. *Cf. Video Software Dealers Ass'n v. Webster,* 968 F.2d 684, 691 (8th Cir.1992) (federal court lacks authority to narrow state statutes in order to avoid unconstitutional vagueness).

1. The Act, Minn.Stat.Ann. § 325E.40, provides:

Sale of petroleum-based sweeping compound products prohibited

**Subdivision 1. Prohibition.** A person may not offer for sale or sell any sweeping compound product that the person knows contains petroleum oil.

**Subd. 2. Labeling.** The manufacturer of sweeping compound that is to be sold in this state shall label the packaging for the compound to clearly indicate the type of oil contained in the compound.

**Subd. 3. Enforcement.** ... [T]he commissioner of the pollution control agency may enforce this section[.]

■ Cotto Waxo asserts that the Act violates the Commerce Clause. The Commerce Clause[2] is a source of federal power. In addition, the "dormant" component of the Commerce Clause imposes limits on state power. *Waste Sys. Corp. v. County of Martin*, 985 F.2d 1381, 1385 (8th Cir.1993). These limits are transgressed when state regulation overburdens interstate commerce.

■ Under the Commerce Clause, a state regulation is per se invalid when it has an "extraterritorial reach," that is, when the statute has the practical effect of controlling conduct beyond the boundaries of the state. *See Healy v. Beer Inst.*, 491 U.S. 324, 336, 109 S.Ct. 2491, 2499, 105 L.Ed.2d 275 (1989). The Commerce Clause precludes application of a state statute to commerce that takes place wholly outside of the state's borders. *Id.*

■ If a statute is not per se invalid, then a reviewing court must determine which level of scrutiny applies. If the challenged statute discriminates against interstate transactions "either on its face or in practical effect," it burdens interstate commerce directly[3] and is subject to strict scrutiny. *See Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986). A statute enacted for a discriminatory purpose is likewise subject to strict scrutiny.[4] *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270, 104 S.Ct. 3049, 3054–55, 82 L.Ed.2d 200 (1984). Under strict scrutiny, a state statute violates the Commerce Clause unless the state can show that the statute serves a legitimate local purpose unrelated to economic protectionism and that the purpose could not be served as well by nondiscriminatory means. *See Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979).

■ In contrast, if the challenged statute regulates evenhandedly, then it burdens interstate commerce indirectly and is subject to a balancing test. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Under the balancing test, a state statute violates the Commerce Clause only if the burdens it imposes on interstate commerce are "clearly excessive in relation to the putative local benefits." *Id.*

■ Cotto Waxo first contends that the Act is per se invalid because it exerts an impermissible extraterritorial reach. Cotto Waxo argues that the Act affects wholly out-of-state conduct because the statute prevents Cotto Waxo, an out-of-state manufacturer, from selling its product to out-of-state retailers and end users.

■ Supreme Court precedent convinces us that Cotto Waxo misapprehends the meaning of extraterritorial reach. Extraterritorial reach invalidates a state statute when the statute requires people or businesses to conduct their out-of-state commerce in a certain way. Two Supreme Court opinions amply illustrate this general principle: the landmark case of *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935), and the more recent case of *Brown–Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986).

In *Seelig*, a New York statute set the minimum prices for milk purchased from New York producers and banned resale of milk purchased for less than the minimum price from out-of-state producers. *Seelig*, 294 U.S. at 519, 55 S.Ct. at 498–99. Thus, in

2. The Commerce Clause provides: "The Congress shall have Power ... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]" U.S. Const. art. I, § 8, cl. 3.

3. It may also be correct to say that "extraterritorial reach" is a special example of "directly" regulating interstate commerce. The Supreme Court has not clarified this point, but clarification would not change the outcome of the present appeal. We analyze the extraterritorial reach cases separately for purposes of simplicity and in

direct response to the arguments presented in the parties' briefs.

4. Cotto Waxo did not argue that the Minnesota legislature had a protectionist motive. Accordingly, we need not consider whether a discriminatory purpose lurks behind the Act and triggers strict scrutiny. We note, however, that the legislative history does not "artlessly disclose[ ] an avowed purpose to discriminate against interstate goods." *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354, 71 S.Ct. 295, 298, 95 L.Ed. 329 (1951).

order to sell out-of-state milk in New York, a milk wholesaler was required to pay a particular price out-of-state, a price dictated by New York. The Court found that the statute effectively set out-of-state milk prices and held the statute unconstitutional. *Id.* at 528, 55 S.Ct. at 502–03.

In *Brown–Forman*, a New York statute required liquor distillers to post their in-state prices for the coming month and to affirm that the posted prices were no higher than the prices which would be charged in other states during the month covered by the posting. *Brown–Forman*, 476 U.S. at 575–76, 106 S.Ct. at 2082–83. The Court found that the statute effectively controlled prices in other states because, once the prices had been posted in New York, a distiller could not lower its prices in any other state. *Id.* at 582, 106 S.Ct. at 2085–86. Accordingly, the Court held that the price-affirmation statute violated the Commerce Clause. *Id.*

■ Thus, a statute has extraterritorial reach when it necessarily requires out-of-state commerce to be conducted according to in-state terms. The statutes in *Seelig* and *Brown–Forman* have an extraterritorial reach not present in the Minnesota Act. The Act does not, either by its terms or in practical effect, necessarily affect out-of-state commerce. The Act does not require Cotto Waxo to conduct its commerce according to Minnesota's terms. Clearly, the Act has affected Cotto Waxo's participation in interstate commerce. Nevertheless, the Act itself is indifferent to sales occurring out-of-state. Cotto Waxo is able to sell to out-of-state purchasers regardless of Cotto Waxo's relationship to Minnesota. We conclude that the Act does not suffer from an unconstitutional extraterritorial reach.

■ Cotto Waxo next contends that even if the statute is not per se invalid, strict scrutiny applies. Cotto Waxo seems to argue that the Act negatively affects Cotto Waxo's business outside of Minnesota and therefore discriminates against interstate commerce. We disagree.

■ Negatively affecting interstate commerce is not the same as discriminating against interstate commerce. In a Com-

merce Clause context, "discrimination" means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. *Oregon Waste Sys., Inc. v. Department of Envtl. Quality,* —— U.S. ——, ——, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994). The Act does not favor in-state businesses or disfavor out-of-state businesses. Regardless of the product's point of origin or point of destination, the Act forbids its sale in Minnesota. Therefore, the Act does not directly burden interstate commerce and strict scrutiny does not apply.

■ Finally, Cotto Waxo contends that the Act cannot survive the *Pike* balancing test. This balancing test requires us to consider the Act's burden on interstate commerce, the Act's local benefits, and the balance between the two.

The Act burdens interstate commerce. Cotto Waxo submitted uncontested evidence that its Minnesota distributors and wholesalers refused to purchase Cotto Waxo's petroleum-based sweeping compounds following the passage of the Act. This evidence shows that the interstate flow of Cotto Waxo's product has been disrupted by the Act. Such a disruption is a burden on interstate commerce. *See Proctor & Gamble Co. v. City of Chicago,* 509 F.2d 69, 78 (7th Cir.) (when city ordinance forbidding sale of product caused disruption in distribution over interstate area, ordinance burdened interstate commerce), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975).

The Act benefits the public. According to the legislative history, the Act will protect the environment: the Act will encourage conservation by cutting down on non-energy uses of petroleum, and will prevent soil and water contamination by reducing the amount of petroleum in landfills. Protecting the environment is clearly a legitimate public benefit. *See Maine v. Taylor,* 477 U.S. at 148, 106 S.Ct. at 2452–53.

In attempting to balance the Act's burden and benefits, we note that neither side of the scale holds an impressive amount of weight. The record reflects no great burden on interstate commerce. Cotto Waxo has lost a dis-

tribution network and annual Minnesota sales of approximately $38,000. We have no concrete sense of how the Act has affected other manufacturers[5] or the interstate market as a whole.

Similarly, the record reflects no great benefit to the public as a result of the Act. Simply put, the Commissioner has failed to submit any evidence related to either the amount of conservation achieved by the Act or the amount of contamination prevented by the Act. The only evidence even relevant to these matters is found in the legislative history. The Minnesota legislature was told, by a Minnesota manufacturer of *soy-based* sweeping compounds, that the Act would keep 100,000 gallons of petroleum out of the waste stream each year. However, the record contains no factual basis for the 100,000 figure. The record does not qualify the speaker as an expert of any sort and does not otherwise reveal the source from which the 100,000 figure was derived.

We are not prepared to say, as a matter of law, that the Act is constitutional. Although the evidence of a burden on interstate commerce is slight, the evidence of a public benefit is even more minuscule. We conclude that the Commissioner was not entitled to summary judgment. The constitutionality of the Act should be tested at trial.

## III. CONCLUSION

The record in this case is such that we cannot declare the Act constitutional as a matter of law and therefore cannot affirm the summary judgment. The judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

---

**5.** The record does contain an affidavit from another Minnesota manufacturer of sweeping compounds. His company used to produce petroleum-based sweeping compounds, which they have now replaced with soy-based sweeping compounds. As a result of the Act, he has lost "some customers." A second affidavit, from the owner of a company that sells janitorial products, obliquely mentions a "loss in business" due his customers' unhappiness with soy-based sweeping compounds.