**ZENITH/KREMER WASTE SYSTEMS, INC., et al., Respondents,**

v.

**WESTERN LAKE SUPERIOR SANITARY DISTRICT, Appellant.**

No. C0–96–1602.

Court of Appeals of Minnesota.

Jan. 28, 1997.

Review Granted March 26, 1997.

Harold A. Frederick, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, for appellant.

Timothy R. Thornton, Jack Y. Perry, Briggs & Morgan, P.A., Minneapolis, for respondents.

Considered and decided by SHORT, P.J., and RANDALL and DAVIES, JJ.

## OPINION

RANDALL, Judge.

Respondent moved for summary judgment on its claim that appellant's solid waste generation and tipping fee scheme violates the Commerce Clause of the federal constitution. The district court granted respondent's motion on the ground that appellant's fee scheme discriminates against interstate commerce and does not use the least onerous means to advance a legitimate local interest. On appeal, appellant argues that its fee scheme is constitutional because it does not discriminate against interstate commerce and because its benefits outweigh any claimed burden on interstate commerce. Alternatively, appellant argues that genuine issues of material fact precluded a grant of summary judgment for respondents. We affirm.

## FACTS

Appellant Western Lake Superior Sanitary District owns and operates a waste processing facility (Facility) near Duluth, Minnesota. The Facility derives heat from solid waste in order to assist in processing waste water. To ensure a consistent stream of solid waste for the facility, appellant adopted a waste designation regulation requiring all persons who generate solid waste in appellant's jurisdiction to dispose of it at the Facility. A federal district court has found this waste designation scheme unconstitutional. *Zenith/Kremer Waste Sys., Inc. v. Western Lake Superior Sanitary Dist.*, Civ. No. 5–95–228 (D.Minn. Oct. 10, 1996).

Respondent Zenith/Kremer Waste Systems, Inc. (Zenith) collects, hauls, and deposits 40 to 50 percent of the solid waste generated within appellant's boundaries. Respondent United Waste Systems, Inc. (United) purchased Zenith. United performs waste collection and hauling services and owns a landfill in Ontonagon County, Michigan. In or about September 1995, shortly after the purchase, respondents informed appellant that they would begin disposing of their Zenith-collected waste in United's Ontonagon County landfill unless appellant reduced its fee for dumping, or "tipping," at the Facility. At the time of respondents' announcement, appellant charged a tipping fee of $63.00 per ton.

Shortly after respondents announced their intentions to dump at the Ontonagon County landfill, appellant adopted a reduced tipping fee of $39.75, effective March 1, 1996. At the same time, appellant began to consider additional fees to finance waste processing costs not covered by the reduced tipping fee. Between October 1995 and January 1996, appellant weighed at least three options for financing various solid waste programs and debt service on improvements to the Facility no longer financed through appellant's tipping fee revenue. Effective March 1, 1996, appellant adopted a waste management fee (management fee) of $28.00 per ton. Appellant imposes the management fee on all solid waste generated in appellant's jurisdiction regardless of where a hauler ultimately dumps the waste. At least 25 percent of the management fee, or seven dollars per ton, finances debt service and operating costs for the Facility. In addition, the management fee finances several programs unrelated to the Facility.

## ISSUES

1. Did the district court err in finding that appellant's fee scheme violates the Dormant Commerce Clause?

2. Did the existence of issues of material fact bar the grant of summary judgment for respondents?

## ANALYSIS

On appeal from summary judgment, reviewing courts must ask whether any genuine issues of material fact exist and whether the lower court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*,

504 N.W.2d 758, 761 (Minn.1993) (citation omitted). Where the parties do not dispute the material facts, a reviewing court need not defer to the district court's application of the law. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989).

## I.

▮ The negative, "or dormant," aspect of the Commerce Clause of the federal constitution bars states from promoting their own commercial interests by restricting the movement of articles of commerce into the state. *Fort Gratiot Sanitary Landfill, Inc. v. Michigan DNR,* 504 U.S. 353, 359, 112 S.Ct. 2019, 2023, 119 L.Ed.2d 139 (1992). Waste processing services constitute an article of commerce within the reach of the dormant commerce clause. *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.,* 511 U.S. 383, 389, 114 S.Ct. 1677, 1681, 128 L.Ed.2d 399 (1994). Courts will find that a law discriminates against interstate commerce if the law treats in-state and out-of-state interests differently, was adopted for a discriminatory purpose, or has discriminatory effects. *Cotto Waxo Co. v. Williams,* 46 F.3d 790, 793 (8th Cir.1995). Justification for discriminatory laws must pass strict scrutiny. *Oregon Waste Sys. v. Department of Envtl. Quality,* 511 U.S. 93, 101, 114 S.Ct. 1345, 1351, 128 L.Ed.2d 13 (1994).

▮ Here, as respondents concede, appellant's fee scheme is facially neutral, because it does not impose different fees on in-state and out-of-state providers of waste processing services. But "a burden * * * upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the States * * *." *Fort Gratiot,* 504 U.S. at 361, 112 S.Ct. at 2025 (citation omitted). As a result, this court will apply strict scrutiny to appellant's fee scheme if appellant adopted the fee scheme for the purpose, or with the effect, of discriminating against interstate commerce. A court will find that a facially neutral law has a discriminatory effect where the law favors in-state interests over out-of-state interests. *See West Lynn Creamery, Inc. v. Healy,* 512 U.S. 186, 199, 114 S.Ct. 2205, 2212, 129 L.Ed.2d 157 (1994) (holding that facially neutral milk tax favored in-state dairy farmers over out-of-state dairy farmers); *see also Carbone,* 511 U.S. at 392, 114 S.Ct. at 1683 (noting that a state or municipality may not "hoard a local resource [such as trash] for the benefit of local businesses that treat it").

In *West Lynn,* the state of Massachusetts imposed a milk tax on all milk sold to Massachusetts retailers, regardless of the milk's origin. The state then used the proceeds of the tax to subsidize local dairy farmers. The Supreme Court invalidated the tax, despite its apparently even-handed application to all milk sold to Massachusetts retailers, on the ground that because Massachusetts dairy farmers received subsidies from the tax proceeds while out-of-state producers did not, the tax was effectively imposed solely on out-of-state milk producers. 512 U.S. at 194, 114 S.Ct. at 2212.

▮ Here, appellant imposes the waste management fee on all parties that generate waste within appellant's jurisdiction. At least seven dollars of this management fee covers debt service on improvements to the Facility, thus permitting appellant to reduce its tipping fee to below the amount necessary without the $7 subsidy from the management fee. Haulers to out-of-state landfills pay the entire management fee, but do not receive the "rebate" that haulers to the Facility receive through the Facility's reduced tipping fee. In effect, then, at least seven dollars of the waste management fee, or a seven dollar tax, is imposed only on haulers to out-of-state landfills, and the ability of these haulers to lower their prices to compete with the Facility is impaired accordingly. On these facts, and in light of the disadvantage that the fee scheme imposes on haulers to out-of-state landfills, the district court did not err in finding that appellant's fee scheme discriminates against interstate commerce.

▮ Appellant also asserts that it did not adopt its fee scheme for the purpose of discriminating against out-of-state competition. Because we find that the fee scheme has discriminatory effects, we apply strict scrutiny regardless of whether the fee scheme was adopted for a discriminatory purpose. *See*

*SDDS, Inc. v. South Dakota,* 47 F.3d 263, 270 (8th Cir.1995) (holding that strict scrutiny applied where referendum, although not openly declaring a discriminatory purpose, had discriminatory effects).

We note in passing that, while we expressly decline to base our decision on the purpose behind appellant's fee scheme, the record supports the district court's finding of discriminatory purpose. Courts have found a discriminatory purpose behind facially neutral laws that benefit in-state interests. *National Solid Waste Management Ass'n v. Williams,* 877 F.Supp. 1367, 1375 (D.Minn. 1995).

■ Here, appellant benefits at the expense of out-of-state interests to the extent that appellant wins business from out-of-state facilities that cannot compete with appellant's subsidized tipping fee. In addition, shortly after respondents sued appellant for an order declaring appellant's waste designation scheme unconstitutional and announced their plans to use their Michigan landfill in lieu of the Facility, appellant modified its fee scheme to discourage tipping at locations other than the Facility. Moreover, the similarity between the total fees collected under the one-fee plan and under the two-fee scheme tends to negate any avowed nondiscriminatory purpose. Lastly, appellant has offered no nondiscriminatory reason for adopting the management fee-subsidized tipping fee.[1]

■ A discriminatory law will withstand strict scrutiny only "in a narrow class of cases in which the municipality can demonstrate * * * that it has no other means to advance [the] legitimate local interest." *Carbone,* 511 U.S. at 392, 114 S.Ct. at 1683 (citing *Maine v. Taylor,* 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986)). Protection of public health and safety and protection of the environment constitute legitimate local interests. *See Fort Gratiot,* 504 U.S. at

366, 112 S.Ct. at 2027 (invalidating law ostensibly enacted for the public health and safety); *SDDS,* 47 F.3d at 271 (invalidating law where environmental safeguards already existed and the law provided only an incremental amount of protection). A discriminatory law designed to serve legitimate local interests will not withstand strict scrutiny, however, if other, less onerous alternatives exist to serve those interests. *Fort Gratiot,* 504 U.S. at 367, 112 S.Ct. at 2027.

*Carbone* involved a commerce clause challenge to a waste flow control law. *Carbone,* 511 U.S. at 388, 114 S.Ct. at 1681. After concluding that the challenged law discriminated against interstate commerce, the court considered whether any less onerous alternatives existed to promote the public health and safety, the local interests allegedly served by the law. *Id.* at 392–93, 114 S.Ct. at 1683. Justice Kennedy, for the court, noted that no nonprotectionist means could ensure, as the challenged flow control law did, that the town-sponsored facility would remain profitable. *Id.* at 393, 114 S.Ct. at 1684. The court nonetheless invalidated the law on the ground that the flow control law was in essence a financing measure, and less burdensome alternatives, such as general taxes, existed to serve the town's financing needs. *Id.*

Here, appellant contends that its fee scheme preserves the environment and protects the public health and safety. Appellant asserts that by ensuring the competitiveness of its tipping fees and a steady flow of solid waste to its facility, appellant reduces demand for nonrenewable fuels and guarantees local residents access to a nearby waste processing station. Because the fee scheme ensures the long-term profitability of the Facility and thus the long-term ability of the Facility to process waste, the fee scheme does, indirectly, serve local interests cited by appellant.

---

**1.** Contrary to respondent's assertions, appellant's admitted desire to reduce tipping fees in order to compete better with out-of-state waste processors does not compel a finding of discriminatory purpose and strict scrutiny review. Appellant could attempt to compete better with out-of-state landfills for solid waste without having a discrimina-

tory purpose, as by paying a higher price for the waste out of general municipal revenues. It is not the desire to compete, but the desire to discriminate against interstate commerce, that subjects a law to strict scrutiny. *See West Lynn,* 512 U.S. at 199, 114 S.Ct. at 2214 (approving of subsidies funded out of general revenues).

Though the fee scheme promotes these legitimate local interests, it nonetheless violates the Commerce Clause. Appellant concedes that, as in *Carbone*, the scheme challenged here is, at its core, a financing measure. And, as in *Carbone*, appellant could ensure the Facility's competitiveness and long-term survival through nondiscriminatory means. Appellant could finance lower tipping fees through an increase in assessments to the municipalities it serves. *See* Minn.Stat. § 458D.09, subd. 1 and 2 (defining current costs and method of allocating costs among local government units served by appellant). The district court properly found that appellant failed to sustain its burden of proving that its fee scheme represents the least onerous alternative for promoting the fee scheme's legitimate purposes. Continued operation of the Facility may promote the local public health and safety. But the Commerce Clause requires that local residents pay their fair share of the cost of this benefit.

■ Appellant urges this court to review appellant's fee scheme under the *Pike v. Bruce Church*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), balancing test. A law will withstand constitutional scrutiny under the *Pike* analysis if the law has only incidental effects on interstate commerce and those effects are not clearly excessive in relation to the law's local benefits. *Pike*, 397 U.S. at 142, 90 S.Ct. at 847. This balancing test applies, however, only where a court finds that the challenged law does not discriminate against interstate commerce facially, in purpose, or in effect. *Id.* at 142, 90 S.Ct. at 847. Because we find appellant's fee scheme discriminatory, we do not apply the *Pike* analysis to appellant's fee scheme.

■ Even if we did apply the *Pike* test here, we could find that appellant's fee scheme violates the Commerce Clause. Appellant's fee scheme imposes at least a seven dollar disadvantage on competitors of the Facility. A disadvantage, or tax, of seven dollars in this market represents a significant

portion[2] of the parties' tipping fees—not an incidental burden on interstate commerce.

■ Appellant also maintains that its fee scheme constitutes a valid regulation of commerce as a valid tax and/or user fee. As appellant concedes, the Supreme Court's analysis of the constitutionality of taxes and user fees requires that the challenged laws not discriminate against interstate commerce. *See Complete Auto Transit v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977) (stating that in order to be valid, a tax must, inter alia, not discriminate against interstate commerce). Because appellant's fee scheme discriminates against interstate commerce, the fee scheme does not constitute a valid tax or user fee.

## II.

Appellant argues that genuine issues of material fact precluded the grant of summary judgment in favor of respondents. Appellant contends that a genuine issue of material fact exists as to whether the Facility benefits waste generators whose haulers take waste to a processor other than appellant. A district court will grant a motion for summary judgment where the pleadings, depositions, answers to interrogatories, and affidavits and admissions on file show that no genuine issue of material fact exists and that either party is entitled to a judgment as a matter of law. Minn R. Civ. P. 56.03; *see Fabio*, 504 N.W.2d at 761 (affirming grant of summary judgment).

■ Here, respondents are entitled to prevail on their claim upon showing that appellant's fee scheme discriminates against interstate commerce and upon appellant's failure to show that it employed the least onerous alternatives to promote a legitimate local interest. *See Carbone*, 511 U.S. at 392, 114 S.Ct. at 1683 (stating that discriminatory laws are per se invalid except where municipality shows it has no other means to advance its legitimate local interest). An evaluation of the local benefits provided by the fee scheme is not material to this analysis. Such an assessment would affect the outcome of

---

**2.** Seven dollars represents a reduction of approximately 15 percent in the $46.75 tipping fee appellant would charge in the absence of the management fee subsidy and an even larger percentage of the tipping fees charged by respondents at their landfill.

the case, and therefore be material, only if this court found that the fee scheme regulates in a nondiscriminatory way and only incidentally burdens interstate commerce. *Pike*, 397 U.S. at 142, 90 S.Ct. at 847. Because we conclude appellant's fee scheme discriminates against interstate commerce, the existence of local benefits attributable to the fee scheme does not constitute a contested issue of fact sufficient to bar the grant of summary judgment for respondents.

 Appellant also asserts that a genuine issue of material fact exists as to the cost of out-of-state disposal of solid waste. The cost of out-of-state disposal relates to the ability of out-of-state haulers to compete with appellant's processing facility. However, "out-of-staters' ability to remain competitive by lowering their prices [does] not immunize a discriminatory measure." *West Lynn*, 512 U.S. at 195, 114 S.Ct. at 2212. As a result, an assessment of out-of-state disposal costs would not affect the outcome of this case. Thus again, although it might be "in dispute," it is not a contested issue of fact of the kind needed to preclude a party from seeking summary judgment.

### DECISION

The district court properly found that appellant's fee scheme is discriminatory, and that appellant could use less onerous alternatives to promote the interests advanced by its fee scheme. No genuine issues of material fact exist to preclude a grant of summary judgment.

**Affirmed.**

DAVIES, Judge (concurring in part, dissenting in part).

I write separately only to express my dissent on the remedy awarded.

I would not set aside 100 percent of the waste disposal fee collected by appellant Western Lake Superior Sanitary District. Instead, we should remand to the district court for a determination of the percentage of the fee that unlawfully impacts interstate commerce. Appellant should be required to return only that unlawful portion.

The resolution I propose is consistent with that in *Johnson Bros. Wholesale Liquor v. Commissioner of Revenue*, 402 N.W.2d 791 (Minn.1987). In *Johnson Bros.*, the Minnesota Supreme Court first observed:

The harm caused by a discriminatory tax on interstate commerce is that it puts such commerce at a competitive disadvantage relative to local commerce. Logically, the disadvantage suffered by relators could have been corrected either by extending the lower rates of section 340.–436 to all wine producers or by severing the statute from the chapter and thus raising taxes for merchants of Minnesota wine.

The United States Supreme Court has recognized that either of these means of equalizing taxes is an acceptable remedy to unconstitutional discrimination.

*Johnson Bros.*, 402 N.W.2d at 793 (citations omitted). The court then affirmed a tax court decision that equalized excise taxes as the remedy for a discriminatory excise tax statute by collecting back taxes from those who had benefitted from the discriminatory tax. *Id.* The concept of simply redressing the improper financial effect of a discriminatory fee or tax should guide our disposition in this case.

The part of the waste disposal fee that is not discriminatory is simply irrelevant to this case. Further, setting aside, in its entirety, the fee that has been collected since March 1, 1996, gives respondents a windfall and, without justification, damages appellant's financial strength. Return of the unconstitutional portion of the fee should be the extent of our concern.