Lois Marie **BRANDENBURG,** Appellant,

v.

**ALLSTATE INSURANCE COMPANY,** Appellee.

No. 93–1962.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1993.

Decided May 11, 1994.

John K. Nooney, Rapid City, SD, argued, for appellant.

Jacqueline S. Glassman, St. Louis, MO, argued, for appellee.

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The policy defined this coverage as follows:

Allstate will pay for all damages an insured person is legally obligated to pay—because of bodily injury or property damage. . . .

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and WOODS,** District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Lois Marie Brandenburg appeals from an order entering summary judgment in favor of Allstate Insurance Company on her uninsured motorist claim. She was a passenger in a van driven by her husband, which he had insured with Allstate. She claims that because Allstate's liability policy excluded any liability to members of the insured's household, the van was uninsured as to her and she is entitled to uninsured motorist coverage benefits. The district court rejected her claim and she appeals. We reverse.

Lois Brandenburg's husband, Dean, carried a policy with Allstate insuring several vehicles, including a 1992 Chevrolet van. Dean was driving the van and Lois was a passenger in it when they had a one-vehicle accident in which Dean was killed and Lois was injured.

The Allstate policy provided a number of separate coverages, the first, Part I, being liability coverage applying to insured persons who were operators of insured vehicles.[1] The liability coverage excluded from coverage liability to related persons who were members of the insured's household.[2] Lois does not claim that liability coverage applies.

Lois only claims she is entitled to recover under the uninsured motorist coverage, provided in a separate self-contained section of the policy, Part V. The uninsured motorists coverage provides that Allstate "will pay damages for bodily injury . . . which an *insured person* is legally entitled to recover

Under these coverages, your policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of the auto we insure. "Insured auto" was defined as "any auto described on the declarations page." "Insured Persons" were defined as "[w]hile using your insured auto: (a) you. . . ."

2. The policy stated that the liability coverage did not apply to liability for "bodily injury to any person related to an insured person by blood, marriage, or adoption and residing in that person's household."

from the owner or operator of an *uninsured auto.*"[3] (Emphasis added). Lois Brandenburg is undoubtedly an "insured person" under the policy terms.[4] The crucial question is whether the van was an "uninsured auto" within the meaning of the uninsured motorists coverage.

Part V of the policy first defines an "insured auto" as "a motor vehicle ... described on the declarations page." The van was so described. However, the policy goes on to define "uninsured auto" as, *inter alia,* "a motor vehicle for which the insurer denies coverage."

Lois simply argues that the term that triggers coverage, "uninsured auto," is defined in the policy so as to apply to the van in which she was injured. She argues that because Allstate denied her coverage under the liability coverage provisions, the van was an uninsured auto as defined in the uninsured motorists coverage.

The district court rejected Brandenburg's argument on two grounds. First, the court reasoned that the uninsured motorists policy specifically included the van as an "insured auto." The court reasoned that the same van could not be both an "insured auto" and an "uninsured auto" under the same policy, and that therefore the policy terms should not be read to refer to the van as an uninsured auto. *Brandenburg v. Allstate Ins. Co.,* 815 F.Supp. 317, 318 (D.S.D.1993). Second, the court held that the household exclusion from liability coverage, specifically sanctioned by the South Dakota legislature in S.D. Codified Laws Ann. § 32–35–70 (Supp.1993), "would be eviscerated if a disappointed member of the named insured's household could simply look to the uninsured motorist provision for coverage after being rejected for liability

coverage based on the exclusion." 815 F.Supp. at 318. Allstate advances both these arguments on appeal.

■ This is a diversity case, governed by the law of South Dakota. The issue before us has not been decided by the South Dakota Supreme Court and it is our responsibility to predict, as best we can, how that court would decide the issue. We review the district court's application of South Dakota law de novo without deference. *Salve Regina College v. Russell,* 499 U.S. 225, 239, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991). We also review the district court's grant of summary judgment de novo. *McKee v. Federal Kemper Life Assur. Co.,* 927 F.2d 326, 328 (8th Cir.1991). The facts are undisputed in this case, and we are asked to resolve questions of policy interpretation.

■ We reject the argument that the categories of "insured auto" and "uninsured auto" are mutually exclusive under the policy. Any compelling logic this argument has is overridden by the policy language. The policy does not simply define an "uninsured auto" as one outside its definition of "insured auto."[5] Instead, it gives the phrase a meaning in its own right, as "an auto for which the insurer denies coverage." Since Lois, the resident family member, was involved in the accident with her husband Dean, the named insured, driving the vehicle designated in the declarations page, "an insured auto," the liability coverage does not apply to her because of the exclusion. Here, Allstate denied coverage to a named insured using an insured vehicle. We thus read the uninsured motorists policy to cover Lois' claim, as it was a claim against an uninsured motorist using a vehicle defined as "uninsured."

---

3. Part V defines "Uninsured Motorists Coverage" as follows:

    We will pay damages for bodily injury, sickness, disease or death which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured or underinsured auto.

4. The uninsured motorists coverage defines "insured persons" as: "You and any resident relative."

5. Further, the policy does not provide that an "insured auto" cannot be an "uninsured auto," as many policies do. *See, e.g., Sprung v. State Farm Mut. Auto. Ins. Co.,* 715 F.Supp. 282, 284 (D.S.D.1989); *Brixius v. Allstate Ins. Co.,* 589 So.2d 236, 237 (Fla.1991); *Harrison v. MFA Mut. Ins. Co.,* 607 S.W.2d 137, 140 (Mo.1980) (en banc).

■ Even if we were to accept the argument that under the policy the definitions of "uninsured auto" and "insured auto" are mutually exclusive, still both definitions apply to the Brandenburgs' van. We would then, therefore, be left with an ambiguity in applying the contract—an ambiguity which we must resolve against Allstate, the scrivener. *See Prokop v. North Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D.1990). Allstate would fail if we were to follow this alternative approach.

■ Nor does it follow that finding uninsured motorist coverage would vitiate the household liability exclusion, and therefore conflict with the legislative intent manifested in S.D. Codified Laws Ann. § 32–35–70. The fact that Lois' claim is covered by the uninsured motorists policy is strictly a result of the particular language Allstate used in its policy. Allstate could have drafted its uninsured motorists coverage to exclude relatives residing in the household, as it did in the liability portion of the policy, but did not do so.

The parties have cited numerous decisions applying the law of South Dakota and of other states. Because our holding is based on the particular policy language before us, we find the other cases provide little guidance, and to the extent the cases from other jurisdictions are relevant, they point in opposite directions. Specifically, the parties cite an earlier case from the District of South Dakota, *Sprung v. State Farm Mut. Auto. Ins. Co.*, 715 F.Supp. 282 (D.S.D.1989), which reaches a result similar to that we reach today. *Sprung* was decided on the ground that a household exclusion from uninsured motorist coverage violated South Dakota public policy. *Id.* at 285. Brandenburg, however, does not make a public policy argument in this case, and we have decided this case on the basis of contractual language, not public policy.

We reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.