# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-3618

_____

Christian Action League of Minnesota; Ann Redding

*Plaintiffs - Appellants*

v.

Mike Freeman, Hennepin County Attorney, in his official capacity

*Defendant - Appellee*

Keith M. Ellison, Attorney General for the State of Minnesota

*Intervenor below - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 14, 2021
Filed: April 21, 2022

_____

Before SMITH, Chief Judge, GRUENDER and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Minnesota Statute § 609.748(2) allows victims to obtain restraining orders against their harassers. The Christian Action League of Minnesota (CAL), an anti-pornography advocacy group, and Ann Redding, its president, brought a pre-

enforcement challenge against the Hennepin County Attorney, arguing that the Statute violated the First and Fourteenth Amendments. The district court[1] dismissed the complaint for lack of standing, concluding that CAL's intended conduct isn't proscribed by the Statute. We affirm.

I.

CAL is a non-profit run by Ann Redding that opposes pornography and sexual exploitation. Its roughly 150 members advocate against sexually oriented publications. One of those publications was *City Pages*, a Minneapolis newspaper owned by the Star Tribune. Since 2010, CAL has publicly opposed companies that advertise in *City Pages*. CAL's members believe that, since *City Pages* runs advertisements for sexually oriented businesses, companies that advertise in *City Pages* are tacitly endorsing those businesses. CAL primarily advocates through postcards, letters, and emails directed at *City Pages*' advertisers.

R. Leigh Frost is a lawyer who advertised her firm in *City Pages*. After Redding noticed one of Frost's advertisements, she sent Frost a postcard asking her to stop buying ad space. The card said, "Porn tears families apart. City Pages promotes strip clubs and porn. As a woman, are you ok with that?" Not long after, Frost's firm received an email and another postcard expressing the same sentiment.

Despite Frost asking CAL to stop contacting her, she received yet another postcard about a week later. Fed up with CAL's messages, Frost filed a petition for a harassment restraining order (HRO) under Minnesota Statute § 609.748(2), which provides that "[a] person who is a victim of harassment . . . may seek a restraining order." Among other things, it defines harassment as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

another, regardless of the relationship between the actor and the intended target." Minn. Stat. § 609.748(1)(a)(1).  The day after Frost filed her petition, a state court judge issued an HRO against CAL.  A few months later, the parties settled and the state court vacated the HRO.

In May 2020, nearly a year after the temporary HRO was vacated, CAL and Redding filed a pre-enforcement challenge against Mike Freeman, the Hennepin County Attorney.  They argued that the Statute violates the First Amendment's guarantees of free speech and association, as well as the Fourteenth Amendment's prohibition on unconstitutionally vague laws.  They sought both declaratory relief and a permanent injunction prohibiting Freeman from prosecuting any HRO under the Statute.

Freeman moved to dismiss the complaint for lack of standing.[2]  He argued that CAL's future plans—contacting businesses by mail and email to persuade them to stop advertising in *City Pages*—are not criminalized by the Statute.  As a result, CAL had no injury in fact.  *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (to establish standing in a First Amendment case, a plaintiff must show that his "decision to chill his speech in light of the challenged statute was objectively reasonable") (quotation omitted).

The district court granted the motion to dismiss for two reasons.  First, it agreed that CAL's planned conduct wasn't prohibited, so CAL didn't have standing to challenge the Statute.  Second, it found that even if CAL had standing at the beginning of the litigation, the case had since been mooted.  While Freeman's motion to dismiss was pending, *City Pages* permanently shut down due to a decline in advertising revenue during the COVID-19 pandemic.  Because CAL's complaint primarily referenced *City Pages*, the court reasoned, the complaint "failed to demonstrate a live dispute involving the actual or threatened application of [the

---

[2]Keith Ellison, Attorney General for the State of Minnesota, also intervened to defend the constitutionality of the statute.  *See* FED. R. CIV. P. 5.1(c) & 24(a)(1).

Statute] to bar particular speech." *Christian Action League of Minn. v. Freeman*, Civil No. 20-1081 ADM/TNL, 2020 WL 6566402, at *5 (D. Minn. Nov. 9, 2020) (quoting *Renne v. Geary*, 501 U.S. 312, 320 (1991)). CAL and Redding appealed.

II.

We review questions of standing and mootness *de novo*, *see Carlsen v. GameStop*, *Inc.*, 833 F.3d 903, 908 (8th Cir. 2016), and jurisdictional findings of fact for clear error, *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

"In order to satisfy Article III's standing requirements, [CAL] must have (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct and (3) [is] likely to be redressed by the proposed remedy." *Starr v. Mandanici*, 152 F.3d 741, 748 (8th Cir. 1998), *overruled on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). The parties dispute whether CAL has shown an injury in fact. To show an injury in fact in a First Amendment pre-enforcement case, a plaintiff must have "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotation omitted). So this appeal turns on a single question: is CAL's planned conduct criminalized by the Statute? If it is, then CAL has standing, and we should reverse. But if the Statute doesn't prohibit CAL's conduct, then CAL isn't affected by the Statute and has no injury in fact. As then-Judge Barrett put it, "no harm, no foul." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 331 (7th Cir. 2019).

The plain text of the Statute is ambiguous as to whether it criminalizes CAL's speech. CAL wants to repeatedly contact, via email and postcards, companies who support sexually oriented businesses. The Statute prohibits "harassment," which includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect . . . on the . . . privacy of another, regardless of the relationship between the actor and the intended target." § 609.748(1)(a)(1). CAL

-4-

argues that this language criminalizes its plan to persuade advertisers to boycott *City Pages*. If that's true, then CAL has been injured because the Statute has chilled its arguably constitutionally protected speech. Freeman, however, argues that postcards and emails to advertisers don't have a "substantial adverse effect . . . on the safety, security, or privacy of another." *Id.* He claims that "[c]onduct that is only offensive, argumentative, or inappropriate," like CAL's, "does not constitute harassment." Freeman Br. at 14 (citing *Witchell v. Witchell*, 606 N.W.2d 730, 732 (Minn. Ct. App. 2000)). If Freeman is correct, then the Statute doesn't criminalize CAL's conduct, and CAL doesn't have standing. Because either interpretation is plausible, the Statute is ambiguous. *See Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 915 (Minn. 2012) ("A statute is ambiguous when the language is subject to more than one reasonable interpretation.").

When interpreting state law, we are bound by the interpretation of a state's highest court. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). But where, as here, a statute hasn't yet been interpreted by the state's highest court, "it is our responsibility to predict, as best we can, how that court would decide the issue." *Brandenburg v. Allstate Ins. Co.*, 23 F.3d 1438, 1440 (8th Cir. 1994). In making that prediction, we look to "relevant state precedent, analogous decisions, considered dicta, . . . any other reliable data," and the state's "rules of statutory construction." *In re Dittmaier*, 806 F.3d 987, 989 (8th Cir. 2015) (citation omitted) (cleaned up). All these factors point toward one conclusion—CAL's conduct is not prohibited by the Statute.

We begin by considering the constitutional savings canon, which dictates that "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916); *see also Matter of Welfare of A.J.B.*, 929 N.W.2d 840, 848 (Minn. 2019) (When a statute is ambiguous, "the canon of constitutional avoidance directs us to construe statutes to avoid meanings that violate constitutional principles."). This canon strongly supports Freeman's interpretation that CAL's speech isn't criminalized by the Statute. CAL wants to write advertisers to encourage them to stop supporting sexually oriented

businesses—what the Supreme Court has dubbed "core political speech." *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988) ("Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'"). Accordingly, adopting CAL's interpretation would require us to cast doubt on the constitutionality of the Statute. This factor weighs heavily in favor of Freeman's interpretation that the Statute doesn't prohibit CAL's speech.

The *noscitur a sociis* canon also supports Freeman's interpretation. This canon, often expressed as "a word is known by the company it keeps," dictates that we should "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Yates v. United States*, 574 U.S. 528, 543 (2015) (citation omitted). This is sometimes also referred to as the "word-association canon." *See State v. Friese*, 959 N.W.2d 205, 213 (Minn. 2021) ("Finally, Friese urges us to consider the word-association canon. Under this canon, the meaning of doubtful words in a legislative act may be determined by reference to their association with other associated words and phrases.") (citation omitted). For instance, a statute covering "motor vehicles, motorcycles, industrial and construction equipment, [and] farm tractors" would not cover electrical wiring, even though that is technically "industrial equipment." *Util. Elec. Supply, Inc. v. ABB Power T&D Co., Inc.*, 36 F.3d 737, 739, 740 (8th Cir. 1994).

This canon suggests that we should narrowly interpret the Statute's definition of "harassment." Harassment is defined as:

> (1) a single incident of physical or sexual assault, a single incident of harassment under [Minnesota's stalking statute], a single incident of nonconsensual dissemination of private sexual images under [Minnesota's revenge porn statute], or repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target;

-6-

(2) targeted residential picketing;[3] and

(3) a pattern of attending public events after being notified that the actor's presence at the event is harassing to another.

Minn. Stat. § 609.748(1)(a). The items listed before repeated unwanted words—sexual assault, stalking, and revenge porn—make CAL's emails and postcards look trivial by comparison. When considering the examples surrounding "repeated . . . unwanted acts [or] words . . . that have a substantial adverse effect . . . [on] privacy," it's clear that the Minnesota legislature only meant to capture truly egregious conduct, not the political speech that CAL engages in. In short, stalking and a few political postcards are not birds of a feather.

Finally, the decisions of Minnesota's intermediate courts give Freeman's interpretation "extra icing on a cake already frosted." *Yates*, 574 U.S. at 557 (Kagan, J., dissenting). In *Dunham v. Roer*, the Court of Appeals of Minnesota held that the Statute's definition of "harassment" does not include constitutionally protected speech. 708 N.W.2d 552, 566 (Minn. Ct. Ap. 2006). It reasoned that "the language of the statute is directed against constitutionally unprotected 'fighting words' . . . 'true threats' . . . and speech . . . that . . . is in violation of one's right to privacy." *Id.* at 566. As a result, the court held the Statute to be narrowly tailored and constitutional. *Id.* Because "state appellate court decisions are highly persuasive and should be followed when they are the best evidence of state law," *Baxter Int'l, Inc. v. Morris*, 976 F.2d 1189, 1196 (8th Cir. 1992), this weighs heavily in favor of Freeman's interpretation.

---

[3]"Targeted residential picketing" is defined as "(1) marching, standing, or patrolling by one or more persons directed solely at a particular residential building in a manner that adversely affects the safety, security, or privacy of an occupant of the building; or (2) marching, standing, or patrolling by one or more persons which prevents an occupant of a residential building from gaining access to or exiting from the property on which the residential building is located." Minn. Stat. § 609.748(1)(c).

We are convinced that the Minnesota Supreme Court would not interpret the Statute's definition of "harassment" to cover CAL's speech. As a result, nothing CAL wants to do is criminalized by the Statute—it is free to encourage advertisers to oppose sexually oriented businesses. Accordingly, CAL's complaint does not allege "an intention to engage in a course of conduct . . . proscribed by a statute," or "a credible threat of prosecution thereunder," *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979), and CAL lacks standing.

III.

The dissent argues that even if CAL's conduct isn't prohibited by Minnesota law, CAL still has standing to sue because it was previously subject to an HRO. There's certainly intuitive appeal to that argument. After all, the fact that a statute has been enforced against someone in the past can give rise to an inference of future enforcement. *See Driehaus*, 573 U.S. at 164 ("Finally, the threat of future enforcement of the false statement statute is substantial. Most obviously, there is a history of past enforcement here . . . . We have observed that past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical.") (quotation omitted).

Nevertheless, CAL does not have standing to seek an injunction. Unlike the cases listed in the dissent, here there is binding Minnesota caselaw holding that the Statute doesn't apply to speech like CAL's. *See Dunham*, 708 N.W.2d at 566 ("[T]he harassment statute only regulates speech or conduct that constitutes 'fighting words,' 'true threats,' or substantial invasions of one's privacy."); *State v. Chauvin*, 955 N.W.2d 684, 695 (Minn. Ct. App. 2021) ("Although parties, attorneys, district court judges, and the public may disagree with this court's precedential decisions, district courts are bound to follow them.").

The only person who has obtained an HRO against CAL is R. Leigh Frost, who is not a party to this litigation. If the dissent is correct that CAL has standing to sue County Attorney Freeman—who has never enforced the Statute against

CAL—then surely CAL would have standing to sue *other* Minnesota residents who are allowed to seek an HRO under the Statute. *See* Minn. Stat. § 609.748(2) ("A person who is a victim of harassment . . . may seek a restraining order."). But we know from the Supreme Court's recent decision in *Whole Woman's Health v. Jackson* that this can't be the case. 142 S.Ct. 522, 535 (2021) ("[U]nder traditional equitable principles, no court may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves.") (quotations omitted).

Because there is no allegation that the Hennepin County Attorney has ever enforced the Statute against CAL's speech or similarly protected speech—or has any plans to do so in the future—CAL lacks standing.

IV.

The judgment of the district court is affirmed.[4]

SMITH, Chief Judge, dissenting.

Establishing standing for a First Amendment pre-enforcement challenge is not a high hurdle to surmount. Applying the law to the instant facts, I would conclude that the appellants cleared it and should be able to proceed further in challenging Minnesota Statute § 609.748. As we have said,

> The relevant inquiry is whether a party's decision to chill his speech in light of the challenged statute was "objectively reasonable." *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009). Reasonable chill exists when a plaintiff shows "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the]

---

[4]Because CAL does not have standing to challenge the Statute, we don't consider the district court's finding that *City Pages*' closure mooted the case.

statute, and there exists a credible threat of prosecution." *Babbitt* [*v. United Farm Workers Nat'l Union*], 442 U.S. [289,] 298 [(1979)].

*281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (first alteration in original). It is not merely arguable but factually undisputed that Redding and CAL showed an intention to engage in conduct with a constitutional interest. They have already engaged in protected First Amendment speech. The Statute proscribed that conduct, and a prosecution has already been initiated with a resulting restraining order.

In *Babbitt*, the Supreme Court's use of the term "arguably" clearly modified "constitutional interest." 442 U.S. at 298. Subsequently, the Court has also connected the term "arguably" to the question of whether a statute proscribes the conduct at issue. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014). In *Driehaus*, the Court evaluated a pre-enforcement claim and concluded that "petitioners' intended future conduct is 'arguably. . . proscribed by [the] statute' they wish to challenge." *Id.* at 162 (alterations in original) (quoting *Babbitt*, 442 U.S. at 298). After recognizing that "the Ohio false statement law sweeps broadly," the Court noted that the facts showed a future intention to speak and, like here, an already- initiated prosecution under the statute. *Id*. The Court then stated, "Under these circumstances, we have no difficulty concluding that petitioners' intended speech is 'arguably proscribed' by the law." *Id*. For standing purposes, then, plaintiffs only need to show that their intended future conduct is "arguably" proscribed by a statute—not that it is certainly proscribed.

I agree with the majority that the Statute is ambiguous. An admittedly ambiguous statute together with solid evidence that the statute has been construed— by a court—to forbid the conduct in question should suffice to show that such conduct is "arguably" proscribed by the Statute. Here, Redding and CAL have demonstrated that the Statute has *in fact* been construed to proscribe their conduct. Surely, this showing clears the relatively low hurdle needed for standing.

Finally, injury-in-fact in the context of a First Amendment pre-enforcement challenge equates to "[r]easonable chill." *See Arneson*, 638 F.3d at 627. Were Redding and CAL "objectively reasonable" in refraining from their intended course of conduct? *See id*. As they had recently been restrained by court order imposed under Minnesota Statute § 609.748, their decision to chill their speech would seem to meet that test.

_____